**IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR CHARLOTTE COUNTY, FLORIDA
CIVIL DIVISION**

FIRST MACEDONIA MISSIONARY
BAPTIST CHURCH, INC.,
      Plaintiff,

v.

STARSTONE SPECIALTY
INSURANCE COMPANY,
      Defendant.

_____/

CASE NO:  **22001442CA**

## **COMPLAINT**

COMES NOW the Plaintiff, FIRST MACEDONIA MISSIONARY BAPTIST CHURCH, INC. (hereinafter "Plaintiff"), by and through the undersigned attorney, and files this Complaint against the Defendant STARSTONE SPECIALTY INSURANCE COMPANY (hereinafter "Defendant"), and as grounds therefore, state as follows:

### **General Allegations**

1. At all times relevant hereto, the Plaintiff is a resident of the State of Florida, residing in Charlotte County.

2. At all times relevant hereto, Defendant is an insurance company organized and existing under the laws of the State of Florida and doing business in the State of Florida and specifically in Charlotte County with Plaintiff.

3. The amount in controversy in this action is greater than Thirty Thousand Dollars ($30,000.00) exclusive of pre-judgment interest, court costs, and attorney's fees.

### **Count I-Breach of Contract**

4. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 3 above, as if fully set forth herein.

5.   This is an action for damages for breach of insurance contract against Defendant.

6.   In consideration of the premium paid to it, Defendant issued to Plaintiff a contract of insurance, Policy No. F77160210CSP, which was in full force and effect at the time of the loss and damage at the insured premises at 411 E Charlotte Avenue, Punta Gorda, FL 33950 (hereinafter "Insured Property"). *Attached hereto as **Exhibit "A"** is what Plaintiff believes to be a true and accurate copy of the policy which underlies this action.*

7.   During the effective period of the insurance policy, Plaintiff's Insured Property suffered direct physical damage caused by wind created breach of building envelope and ensuing water and mold losses, perils for which the policy of insurance issued by Defendant provides coverage.

8.   The sudden and unexpected loss caused by wind created breach of building envelope and ensuing water and mold losses caused Plaintiff to sustain loss to the covered structure and its roof as well as the interior of the insured property.

9.   The sudden and unexpected loss caused by wind created breach of building envelope and ensuing water and mold losses caused Plaintiff to incur additional expenses and will continue to cause expenses and loss.

10.  Plaintiff has made a timely claim for the damage and loss. Defendant assigned Claim No. 4193053.

11.  Plaintiff has requested that Defendant pay Plaintiff for Plaintiff's damages, but Defendant has failed and refused and continues to refuse to fully pay.

12.  The Plaintiff has done and performed all those matters and things properly required of Plaintiff under the insurance policy or, alternatively, has been excused from performance by the acts and/or omissions of Defendant.

13. Notwithstanding the foregoing, Defendant has failed or refused to provide full coverage under the insurance policy and has failed to pay promptly the full amounts due and has thereby breached the contract of insurance.

14. As a direct result of Defendant's breach of insurance contract, Plaintiff has been financially damaged and continues to suffer damage and loss.

15. As a result of Defendant's breach of the insurance contract, it has become necessary for Plaintiff to incur and become obligated for attorney's fees and costs in connection with the prosecution of this action.  Plaintiff is entitled to have Defendant pay said fees and costs owed under Florida law.

WHEREFORE, the Plaintiff prays this Court enter judgment in Plaintiff's favor and against Defendant for damages including actual and compensatory damages, pre-judgment interest, costs of this action, attorney's fees, and such other and further relief as this Court may deem appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff requests a trial by jury on all issues so triable.

Dated: October 26, 2022

Respectfully submitted,

KRAPF LEGAL, P.A.

  /s/ Grant W. Krapf, Esq._____
GRANT W. KRAPF, ESQ.
FBN: 072058
2790 Sunset Point Road
Clearwater, FL 33759
Telephone: (727) 777-7450
E-mail:  grant@krapflegal.com
assist@krapflegal.com
*Counsel for Plaintiff*



Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.starstone.com

**EXHIBIT**
**"A"**

# STARSTONE SPECIALTY INSURANCE CO.

**GENERAL PROPERTY DECLARATIONS**
This Declaration Page is attached to and forms part of the Policy as defined herein.

**Policy Number:** F77160210CSP                    **Renewal Of: NEW**

**POLICY PERIOD:**
Inception Date:   06/01/2021                    Expiration Date: 06/01/2022
(12:01 A.M. Standard Time at the address of the Named Insured as stated herein)

**Named Insured and Mailing Address:**          Integrity Church & School Services, LLC
                                                15249 Amberly Drive
                                                Tampa, FL 33647

**Producer Named and Address:**                 Pat Tolland
                                                AmWINS Brokerage of Florida
                                                1227 South Patrick Drive, Suite 101
                                                Satellite Beach, FL 32937

**Description of Operations:**                   Other

## Property Insurance

In return for the payment of the premium, and subject to all the terms of this policy, we agree to provide you with the insurance as stated in this policy.

**PREMIUM and FEES:**
This policy consists of the following coverage for which premium is indicated.  This premium may be subject to adjustment:

Commercial Property Coverage:          $1,073,746.00
TRIA:                                  $REJECTED
Inspection Fee:                        $N/A
                                       _____

TOTAL:                                 $1,073,746.00

**Issuing Company:**        StarStone Specialty Insurance Company

**Locations Covered:**      As per latest Schedule on File with the Company

**Forms and**
**Endorsements:**   See attached Schedule of Forms and Endorsements, CSI-CPN-202-0720

CSI-CPD-101-0720                                              Page 1 of 2



Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.starstone.com

**THESE DECLARATIONS, ALL INFORMATION AND MATERIALS MADE AVAILABLE BY OR ON BEHALF OF THE INSUREDS DURING THE UNDERWRITING PROCESS FOR THIS POLICY OR OTHERWISE INCLUDED WITHIN THE DEFINITION OF APPLICATION IN THE FOLLOWED POLICY, AND THIS POLICY FORM INCLUDING ATTACHED ENDORSEMENTS CONSTITUTE THE INSURANCE POLICY. ("Policy")**

07/14/2021
_____

Date of Issuance

_____

Authorized Representative

CSI-CPD-101-0720



**FORMS AND ENDORSEMENTS SCHEDULE**

The following Parts all attach to and form a part of this policy.

| FORM NUMBER | FORM NAME |
|---|---|
| CSI-CPN-201-0720 | Cover Page |
| CSI-CSN-810-0421 | Surplus Lines Policyholder Notification - Florida |
| CSI-CPD-101-0720 | Policy Declarations |
| CSI-CPN-202-0720 | Forms and Endorsement Schedule |
| CSI-CPN-203-0720 | Policy Holder Notification - Fraud Notice |
| CSI-CPN-204-0720 | Policy Holder Notification - OFAC |
| CSI-CPN-205-0720 | Notice of Claims Reporting |
| CSI-CPN-206-0720 | Notice of Privacy Policies and Practices |
| CSI-CPF-300-0720 | Base Property Comprehensive Form |
| CSI-CPE-039-0720 | TRIA Rejection |
| CSI-CPE-042-0720 | Named Storm Deductible Endorsement |
| CSI-CPE-045-0720 | Wind Driven Precipitation Deductible Endorsement |
| CSI-CPE-053-0720 | Florida Catastrophic Ground Cover Collapse and Sinkhole Loss |
|  |  |
|  |  |
|  |  |



# POLICYHOLDER NOTIFICATION
# FRAUD NOTICE

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |



| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
|---|---|
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Oregon | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in Prison. The aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |



| | |
|---|---|
| | **Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and<br>may be subject to fines and confinement in prison. |
| **Tennessee** | All Commercial Insurance, Except As Provided for Workers' Compensation It is a crime to<br>knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>Workers' Compensation: It is a crime to knowingly provide false, incomplete or misleading<br>information to any party to a workers' compensation transaction for the purpose of committing<br>fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | Workers' Compensation: Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state<br>prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance<br>company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance<br>company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit<br>or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |



## POLICY HOLDER NOTIFICATION

## U.S. Treasury Department's Office of Foreign Assets Control ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

### PLEASE READ THIS NOTICE CAREFULLY

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

CSI-CPN-204-0720                                                                      Page 1 of 1



**NOTICE OF CLAIMS REPORTING PROCEDURES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

All claims should be reported per the below:

Email: claims@corespecialty.com

Or

Phone: (201) 743-7700

Please have the following information available:
1. Insured Name
2. Policy Number
3. Date of Loss
4. Location of Loss
5. Detailed description of the loss event

All other terms and conditions of this Policy remain unchanged.



## NOTICE OF OUR PRIVACY POLICIES AND PRACTICES

This Notice has been prepared to inform you that we do not disclose and we reserve no right to disclose to our affiliates or to nonaffiliated third parties, your nonpublic personal information, which we collect and maintain except with your permission or as permitted by law.

**Information we collect and maintain**:  We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications, at your request or otherwise;
- Information we obtain from your transactions with us, our affiliates or others;
- Information we receive from consumer-reporting agencies.

**Information we may disclose**:  We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

**How we protect information**:  Except as otherwise described in this Notice, we restrict access to your nonpublic personal information to our employees who need to know to provide our products and services to you and as permitted by law.  We maintain physical, electronic, and procedural safeguards that comply with applicable legal requirements to guard your nonpublic personal information.  We have installed usernames, passwords and other safety features on our web applications to help ensure that the information you provide remains safe and secure.

**Changes to this Notice:**  We may amend our privacy policies and practices at any time, and we will inform you of any material changes as required by law.

**YOU DO NOT NEED TO DO ANYTHING IN RESPONSE TO THIS NOTICE**

**THIS NOTICE IS MERELY TO INFORM YOU ABOUT OUR**

**PRIVACY POLICIES AND PRACTICES**

**StarStone**
Part of the Core Specialty Group

## StarStone Base Property Comprehensive Form

SECTION I - COVERAGES AND LIMITS OF LIABILITY

Terms which appear in boldface type have special meaning. Most are defined in **Section VIII: POLICY DEFINITIONS**, however, some definitions are set forth in other sections.

A.    **NAMED INSURED: NAMED INSURED** (as shown in the **DECLARATIONS**) and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is responsible or legally obligated to insure but only as to **LOCATION(S)** specified in the **STATEMENT OF VALUES** or, subject to the terms herein as to **NEWLY ACQUIRED  LOCATIONS** or **MISCELLANEOUS UNNAMED LOCATIONS**.

B.    **ADDITIONAL INSURED(S), MORTGAGEE(S), and LENDER'S LOSS PAYEE(S):** Per endorsements or certificates of insurance issued or on file with Company. Any endorsements or certificates of insurance issued in connection with this **POLICY** shall be issued solely as a matter of convenience or information (and do not alter or amend  coverage) except where any **ADDITIONAL INSURED(S), MORTGAGEE(S), and LENDER'S LOSS PAYEE(S)** are named pursuant to the Special Provisions of said endorsements or certificates of insurance and only if the endorsement or certificate of insurance is issued prior to a loss. Such endorsements or certificates of insurance  adding any **ADDITIONAL INSURED(S), MORTGAGEE(S), and LENDER'S LOSS PAYEE(S)** will be deemed attached to the **POLICY** and the **NAMED INSURED** will pay any required premium.

C.    **COVERAGE TERRITORY**: Coverage under this **POLICY** applies to **OCCURRENCES** within the United States of America being the fifty (50) states of the Union plus the District of Columbia.

D.    **INSURING AGREEMENT:** In consideration of the premium charged, this **POLICY** covers sudden and accidental direct physical loss of or damage to the **COVERED PROPERTY** at all covered **LOCATIONS** caused by a **COVERED CAUSE OF LOSS** occurring during the **POLICY** period. Coverage shall be subject to the terms, conditions, definitions, exclusions, limitations and provisions contained herein or endorsed hereto

E.    **PARTICIPATION**: The **LIMIT OF LIABILITY** shown in Section I.F. and **SUBLIMITS OF LIABILITY** shown in Section I.G. or endorsements attached to this **POLICY** represent 100% from the ground up for all Insurance Companies combined whether issued as Co-Insurance or as separate policies to  this one. The maximum share of the limit of liability for the **INSURER** in any one  **OCCURRENCE** as a result of **COVERED CAUSE OF LOSS** under this **POLICY** is 100%.

F.    **LIMIT OF LIABILITY:**
The total maximum **LIMIT OF LIABILITY** in any one **OCCURRENCE** as a result of a **COVERED CAUSE OF LOSS** regardless of the number of **LOCATIONS**, coverages, or perils insured under this **POLICY** shall not exceed the lesser of 1 OR 2:

1.    As respects to each **LOCATION** Insured by this Policy: 100% of the total combined stated values for all categories of **COVERED PROPERTY** shown for that **LOCATION**; and separately, 100% of the total combined stated values for **TIME ELEMENT COVERAGES** shown for that **LOCATION**; all on the latest **STATEMENT OF VALUES** or other documentation on file with the Company.



OR

2.    $5,000,000 maximum **LIMIT OF LIABILITY.**

G.    **SUBLIMITS OF LIABILITY**: **SUBLIMITS OF LIABILITY** stated below are included within and not in addition to the **LIMIT OF LIABILITY** shown in Paragraph F., above. These **SUBLIMITS OF LIABILITY** and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **OCCURRENCE,** unless otherwise indicated.

If the words **"NOT COVERED"** are shown, instead of a limit, sublimit dollar amount or number of days, or if a specified dollar amount or number of days is not shown corresponding to any coverage or **COVERED CAUSE OF LOSS**, then no coverage is provided for that coverage or **COVERED CAUSE OF LOSS**.

When a **SUBLIMIT OF LIABILITY** applies to property that **SUBLIMIT OF LIABILITY** also applies to any **TIME ELEMENT COVERAGE** associated with that property.

**SUBLIMITS OF LIABILITY**

1.    **EARTHQUAKE:**
   a.    $NOT COVERED Annual Aggregate, for all insured **LOCATIONS**, combined; further subject to:
   b.    N/A Annual Aggregate, for all insured **LOCATIONS** in California
   c.    N/A Annual Aggregate, for all insured **LOCATIONS** in Alaska
   d.    N/A Annual Aggregate, for all insured **LOCATIONS** in Hawaii
   e.    N/A Annual Aggregate, for all insured **LOCATIONS** in **PACIFIC NORTHWEST STATES**
   f.    N/A Annual Aggregate, for all insured **LOCATIONS** in **NEW MADRID**

2.    **FLOOD:**
   a.    $NOT COVERED Annual Aggregate, for all insured **LOCATIONS,** subject to the below, which is part of and not in addition to this limit:
   b.    $NOT COVERED Annual Aggregate as respects **FLOOD** for all **LOCATIONS,** combined, wholly or partially within **SPECIAL FLOOD HAZARD AREAS.**

3.    **NAMED STORM:**
   a.    **INCLUDED**  Regardless of the number of coverages, **LOCATIONS,** or perils involved including, but not limited to, all wind, wind gusts, tornados, cyclones, hail, or rain, all arising out of a **NAMED STORM**, this is the maximum amount that will be paid per **OCCURRENCE** as respects any **COVERED CAUSE OF LOSS**.  In the event covered loss or damage by **FLOOD** arises out of a **NAMED STORM**, the maximum amount that will be paid per **OCCURRENCE** for all such loss or damage by **FLOOD** shall be the **SUBLIMITS OF LIABILITY** for **FLOOD** as shown in Subparagraph G.2.a and G.2.b. above.  However, if **FLOOD** is not covered, the maximum amount that will be paid per **OCCURRENCE** for all such loss or damage by **NAMED STORM** shall exclude loss or damage by **FLOOD.**

4.    **WIND DRIVEN PARTICIPATION:**
   a.    $250,000 per **OCCURRENCE**, for all insured **LOCATIONS,** combined



In the event a loss involved more than one of the above perils (G. 1. – G. 3.) and provided it is a covered peril(s), each peril's sublimit above shall be considered a separate **SUBLIMIT** apart from the other peril's **SUBLIMITS** above.

However, the **SUBLIMITS** below (G. 5. – G. 45.) shall be considered **SUBLIMITS** within the above applicable covered peril **SUBLIMITS** (G.1. – G.4.)

| | | |
|---|---|---|
| 5. | **ACCOUNTS RECEIVABLE** | $100,000 |
| 6. | **BACKUP OF SEWERS AND DRAINS** | $100,000 |
| 7. | **BUILDERS RISK** | $100,000 |

Property in the course of construction or renovation, excluding **SOFT COSTS**

8. **DEBRIS REMOVAL**

Total liability for **DEBRIS REMOVAL** per **OCCURRENCE** for all insured **LOCATIONS** sustaining a **COVERED CAUSE OF LOSS** payable under this **POLICY** shall not exceed the lesser of:

a. 25% of the amount of covered physical loss or damage to **COVERED PROPERTY** (excluding **TIME ELEMENT COVERAGES**), payable for all insured **LOCATIONS**; or

b. $500,000

| | | |
|---|---|---|
| 9. | **ELECTRONIC DATA AND MEDIA** | $100,000 |
| 10. | **ERRORS AND OMISSIONS** | $100,000 |
| 11. | **FINE ARTS** | $25,000 |
| 12. | **FIRE BRIGADE CHARGES** | $15,000 |
| 13. | **FUNGUS, MOLDS, MILDEW, SPORES, YEAST** | $15,000 |

per Occurrence and Annual Aggregate

| | | |
|---|---|---|
| 14. | **LEASED OR RENTED EQUIPMENT** | $25,000 |

But not to exceed: $1,000 any one item

| | | |
|---|---|---|
| 15. | **LEASEHOLD INTEREST** | $25,000 |
| 16. | **LIMITED POLLUTION COVERAGE** | $25,000 Annual Aggregate |
| 17. | **LOCK REPLACEMENT** | $5,000 |
| 18. | **MISCELLANEOUS UNNAMED LOCATIONS** | $100,000 |

Subject to all other **SUBLIMITS** contained herein

| | | |
|---|---|---|
| 19. | **NEWLY ACQUIRED PROPERTY** | 60 days |

In no event will this **POLICY** pay more than: $250,000



Subject to all other **SUBLIMITS** contained herein.

20. **ORDINANCE OR LAW**
    a.    Coverage A                                              Included in **BUILDING** Limit
    b.    Coverage B          The lesser of $500,000 or 15% of **BUILDING LIMIT** per **BUILDING**
    c.    Coverage C          The lesser of $500,000 or 15% of **BUILDING LIMIT** per **BUILDING**
    d.    Coverage D (if covered)                          Included in **TIME ELEMENT**

21. **OUTDOOR PROPERTY**                                              $100,000

22. **PAIRS OR SETS**                                                     $5,000

23. **PERSONAL PROPERTY OF OTHERS**                              $10,000

24. **PLANTS, LAWNS, TREES OR SHRUBS**                          $50,000
    Maximum for any one plant, lawn, tree, or shrub          $1,000

25. **PROFESSIONAL FEES FOR ALL CLAIMS COMBINED**          $10,000
                                        Per Occurrence and Annual Aggregate

26. **PROPERTY REMOVED FROM INSURED LOCATIONS**          $10,000

27. **PROTECTION AND PRESERVATION OF PROPERTY**          $100,000

28. **RECLAIMING, RESTORING or REPAIRING LAND IMPROVEMENTS**          $10,000

29. **REWARD REIMBURSEMENT**                                        $25,000

30. **SIDEWALKS, PAVED SURFACES, ROADWAYS**                  $50,000

31. **SPOILAGE**                                                          $5,000

32. **TRANSIT**                                                          $10,000

33. **UNDERGROUND PIPES, FLUES and DRAINS**                  $10,000

34. **VALUABLE PAPERS OR RECORDS**                              $10,000


**Time Element Coverages**

35. **ORDINARY PAYROLL**                                              30 days
    (provided values are included in the **TIME ELEMENT VALUES** on **STATEMENT OF VALUES**)

36. **BUILDER'S RISK SOFT COSTS**                                  $50,000



| 37. | **CONTINGENT TIME ELEMENT** | |
| | The lesser of: | 30 days or $100,000 |

| 38. | **EXTENDED PERIOD OF INDEMNITY** | 30 days |

| 39. | **EXTRA EXPENSE** | $100,000 |

| 40. | **INGRESS & EGRESS COVERAGE** | 30 days |
| | But in no event will this **POLICY** pay more than: | $100,000 |
| | Subject to a 72 hour qualifying period | |

| 41. | **INTERRUPTION BY CIVIL OR MILITARY AUTHORITY** | |
| | **restricting access to LOCATIONS** | 30 days |
| | But in no event will this **POLICY** pay more than: | $100,000 |
| | Subject to a 72 hour qualifying period | |

| 42. | **RENTAL VALUE** | Included |

| 43. | **ROYALTIES** | $10,000 |

| 44. | **SERVICE INTERRUPTION** | 3 weeks |
| | But in no event will this **POLICY** pay more than: | $500,000 |
| | Subject to a 72 hour qualifying period | |

| 45. | **TIME ELEMENT MONTHLY LIMITATION** | 1/12 monthly |
| | Applicable to all **TIME ELEMENT COVERAGES,** | |
| | except those that have a **SUBLIMIT** in this Paragraph G. | |

H. **MAXIMUM AMOUNT PAYABLE**: In the event of a **COVERED CAUSE OF LOSS** hereunder, total liability under this **POLICY** shall be limited to the least of the following in any one **OCCURRENCE**:

1. The actual adjusted amount of loss, less applicable **DEDUCTIBLE(S),** or

2. The **LIMIT OF LIABILITY** or applicable **SUBLIMIT OF LIABILITY** shown in this **POLICY** or endorsed onto this **POLICY**.

I. **DEDUCTIBLE:** Each claim for loss or damage under this **POLICY** shall be subject to a per **OCCURRENCE DEDUCTIBLE** amount of:

1. N/A Property Damage & **TIME ELEMENT COVERAGE** combined; OR
2. $5,000 Property Damage; and
3. 72 hours **TIME ELEMENT COVERAGE** – Waiting Period

Unless a specific **Deductible** shown below applies for the indicated peril(s) or a specific qualifying period is shown in the **SUBLIMITS** (G.5. – G.45) above.

**StarStone**

Part of the Core Specialty Group

4.    **EARTHQUAKE:**
a.    $ N/A per **OCCURRENCE**, except as follows in Subparagraph I.4.b.,
b.    N/A % of the **TIV** at each **LOCATION** involved in the loss or damage arising out of an **EARTHQUAKE**, subject to a minimum **DEDUCTIBLE** of $ N/A per **OCCURRENCE**; as respects **LOCATIONS** in: All **LOCATIONS**, as per **STATEMENT OF VALUES** on file with the Company

5.    **FLOOD:**
a.    N/A per **OCCURRENCE**, except as follows in Subparagraph I.5. b.
b.    As respects **LOCATIONS**, wholly or partially within **SPECIAL FLOOD HAZARD AREAS:** Maximum available limits with National Flood Insurance Program (NFIP), whether purchased or not plus N/A per **OCCURRENCE.**

6.    **NAMED STORM:**
a.    SEE ENDORSEMENT per **OCCURRENCE**, except as follows in Subparagraph I.6.b.
b.    N/A % of the **TIV** at each **LOCATION** involved in the loss or damage arising out of a **NAMED STORM**, subject to a minimum **DEDUCTIBLE** of $ N/A per **OCCURRENCE**; as respects **LOCATIONS** in: All **LOCATIONS**, as per **STATEMENT OF VALUES** on file with the Company

7.    **ALL OTHER WINDSTORM OR HAIL:**
a.    $25,000 per **OCCURRENCE**, except as follows in Subparagraph I.7.b and I.7.c**:**
b.    N/A % of the **TIV** at each **LOCATION** involved in the loss or damage arising out of **WINDSTORM OR HAIL**, subject to minimum **DEDUCTIBLE** of $ N/A per **OCCURRENCE**; as respects to **LOCATIONS** in: **WINDSTORM OR HAIL HIGH HAZARD ZONE 1**, as per **STATEMENT OF VALUES** on file with the Company
c.    N/A % of the **TIV** at each **LOCATION** involved in the loss or damage arising out of **WINDSTORM OR HAIL**, subject to minimum **DEDUCTIBLE** of $ N/A per **OCCURRENCE**; as respects to **LOCATIONS** in: **WINDSTORM OR HAIL HIGH HAZARD ZONE 2**, as per **STATEMENT OF VALUES** on file with the Company

8.    **WIND DRIVEN PRECIPITATION**
a.    SEE ENDORSEMENT per **OCCURRENCE**, except as follows in Subparagraph I.8.b.
b.    N/A % of the **TIV** at each **LOCATION** involved in the loss or damage arising out of a **NAMED STORM**, subject to a minimum **DEDUCTIBLE** of $ N/A per **OCCURRENCE**; as respects **LOCATIONS** in: All **LOCATIONS**, as per **STATEMENT OF VALUES** on file with the Company

The following two paragraphs apply to Subparagraphs I.4. through I.8., inclusive:

In each case of loss or damage covered by this **POLICY**, there shall be no liability hereunder unless the **NAMED INSURED** sustains loss or damage in a single **OCCURRENCE** greater than any applicable **DEDUCTIBLE** described herein. When this **POLICY** covers more than one **LOCATION**, the **DEDUCTIBLE** shall apply against the total loss or damage covered by this **POLICY** in any one **OCCURRENCE**, unless otherwise stated in this Paragraph I.

If two or more peril **DEDUCTIBLE** amounts provided in this **POLICY** apply to a single **OCCURRENCE**, the total to be deducted shall not exceed the largest **DEDUCTIBLE** applicable, unless otherwise stated in this **POLICY**. However, if a **TIME ELEMENT COVERAGE DEDUCTIBLE** and another **DEDUCTIBLE** apply to a single **OCCURRENCE**, then both **DEDUCTIBLES** shall be applied to the **OCCURRENCE**.

**StarStone**

Part of the Core Specialty Group

**SECTION II – COVERED CAUSES OF LOSS**

A.  **COVERED CAUSES OF LOSS**: This **POLICY** insures against all risks of sudden and accidental direct physical loss or damage to **COVERED PROPERTY**, except as excluded.

B.  **EXCLUSIONS**: There is no coverage under this **POLICY** for loss or damage caused directly or indirectly by any of the following exclusions. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

1.  **NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL EXCLUSIONS**

    a.  This **POLICY** will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

        i.   Nuclear Hazard - including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

        ii.  Biological Hazard - including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

        iii. Chemical Hazard - including, but not limited to, any chemical agent, material, product or substance;

        iv.  Radioactive Hazard - including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

    b.  The provisions of subparagraphs a.i., a. ii., a. iii., and a.iv. will not apply where the agent, material, product, or substance at issue is utilized in the course of business by a **NAMED INSURED**

    c.  Only if, and to the extent required by state law, the following exception to the exclusions in subparagraph a. applies:

        If a hazard excluded under subparagraph a. results in fire (and provided fire  is  a **COVERED CAUSE OF LOSS**), this **POLICY** will pay for the loss, damage, cost or expense caused by that fire, subject to all applicable **POLICY** provisions including the **LIMIT OF LIABILITY** on the affected **COVERED PROPERTY**. Such coverage for fire applies only to direct loss or damage by fire to **COVERED PROPERTY**. This coverage does not apply to insurance provided under **TIME ELEMENT COVERAGES**, including but not limited to, Business Income, **RENTAL VALUE** or **EXTRA EXPENSE** coverage or endorsements that apply to those coverages.



**2.    WAR OR WARLIKE ACTION EXCLUSIONS**

   a.    War, hostile or warlike action in time of peace or war, whether or not
         declared, including action in hindering, combating, or defending against an actual,
         impending, or expected attack:

      i.    By any government or sovereign power (de jure or de facto) or by any authority
            maintaining or using military, naval, or air forces; or
      ii.   By military, naval, or air forces; or
      iii.  By an agent of any such government, power, authority, or force;

   b.    Any weapon of war employing atomic fission or radioactive force, whether in time of peace
         or war, whether or not its discharge was accidental; or

   c.    Insurrection, rebellion, revolution, civil war, usurped power, or action taken by
         governmental authority in hindering, combating, or defending against such **OCCURRENCE**,
         seizure or destruction;

   Including any consequence of Subparagraphs 2.a., 2.b., 2.c., above.

**3.    ANY FRAUDULENT OR DISHONEST ACT OR ACTS,** intended to result in  financial  gain,  loss  or
   damage to **COVERED PROPERTY** committed alone or in collusion with others: by any proprietor,
   partner, director, trustee, officer or employee of  the Insured (including leased employees), or  by
   any party to whom the property may have been entrusted (other than a carrier for hire).

**4.    ASBESTOS.**
   a.    Loss, damage, or remediation expenses caused by or resulting from the presence of asbestos
         or asbestos-containing materials. As used in this exclusion, remediation expenses are
         expenses incurred for or in connection with the investigation, monitoring, removal,
         increased cost  of reconstruction, disposal, treatment, abatement or neutralization of
         asbestos or asbestos-containing materials to the extent required by federal, state or local
         laws, regulations or statutes or any subsequent amendments thereof
         to address **ASBESTOS**.

   b.    However, this **ASBESTOS** exclusion does not apply to the extent that coverage is provided
         under the following:

      i.    This **POLICY** insures **ASBESTOS** located within an insured **BUILDING** or structure, and
            then only that part of the **ASBESTOS** which has been physically damaged during the
            **POLICY** period by a **DEFINED CAUSE OF LOSS.**
      ii.   This coverage is subject to all limitations in the **POLICY** and, in addition, to each of
            the following specific conditions to coverage:

         a.    The said **BUILDING** or structure must be insured under this **POLICY** for
               damage by this **COVERED CAUSE OF LOSS.**

**StarStone**

Part of the Core Specialty Group

  b. The **COVERED CAUSE OF LOSS** must be the immediate, sole cause of the damage to the **ASBESTOS**.

  c. The Insured must report the existence and cost of the damage as soon as practicable after the **COVERED CAUSE OF LOSS** first damaged the **ASBESTOS**. However, there is only coverage for reports of loss no later than 12 (twelve) months after the expiration, or termination, of the **POLICY** period.

 c. Insurance under this **POLICY** in respect of **ASBESTOS** shall exclude any sum relating of:
  i. any faults in the design, manufacture or installation of the **ASBESTOS**;
  ii. **ASBESTOS** not physically damaged by a **COVERED CAUSE OF LOSS** including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged **ASBESTOS**.

**5.** **POLLUTION /CONTAMINATION EXCLUSION**
Except as otherwise specifically provided in Paragraph I of SECTION VI – **ADDITIONAL COVERAGES**, this **POLICY** does not insure:

 a. any loss, damage, cost or expense, or

 b. any increase in insured loss, damage, cost or expense, or

 c. any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation), which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this clause includes (but is not limited to):

  i. seepage of , or pollution and/or contamination by, anything, actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any sudden and direct physical loss or damage insured by this policy including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and



ii.      the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6.      Delay, loss of market or loss of use, other than as expressly set forth in this **POLICY**.

7.      Remote or consequential loss or damage, including but not limited to liquidated damages, performance penalties, penalties for non-completion, delay in completion, or noncompliance with contract conditions whether caused by an insured peril or otherwise. But this exclusion does not apply to **TIME ELEMENT COVERAGE** when it is covered under this **POLICY**.

8.      Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

9.      Voluntary parting with title or possession of any property, including voluntary parting which is the result of any fraudulent scheme, trick, devise, false pretences, or any other similar act.

10.     Faulty or defective workmanship, material, construction, installation, or design from any cause; or faulty planning, zoning, development, surveying or siting; all unless direct physical loss or damage not excluded by this **POLICY** ensues, in which event, this **POLICY** will cover only such resulting damage.

11.     Fault, defect, error, deficiency or omission in design, plan or specification, unless direct physical loss or damage not excluded by this **POLICY** ensues, in which event, this **POLICY** will cover only such resulting damage.

12.     Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not excluded by this **POLICY** results, in which event, this **POLICY** shall cover only such resulting damage.

13.     Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or  latent defect, shrinkage or  change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not excluded by this **POLICY** results, in which event, this POLICY shall cover only such resulting damage.

14.     Subsidence, sinkhole, settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; However, if direct physical loss or damage not otherwise excluded by this **POLICY** ensues, this **POLICY** will cover only such ensuing loss or damage.

15.     Infestation, disease, freeze, drought and hail, weight of ice or snow or any damage caused by insects, vermin, rodents or animals to **PLANTS, LAWNS, TREES, OR SHRUBS**.

16.     Erosion of graded or planted finish or rough grades which results from normally expected or predictable precipitation and surface water runoff.



17.    Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **OCCURRENCE** away from any **LOCATION** insured under this **POLICY**, unless specifically provided herein and only to the extent provided herein.

18.    Costs, expenses, fines or penalties incurred or sustained by or imposed on the **NAMED INSURED** at the order of any government agency, court or other authority arising from any cause whatsoever.

19.    Electronic Data Exclusion

    a.    This **POLICY** does not insure loss, damage, destruction, distortion, erasure, corruption, alteration, loss of use, reduction in functionality, cost, or expense resulting from "Computer Virus."
    "Computer Virus" means a set of corrupting, harmful or otherwise  unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a  computer system or network of whatsoever nature. "Computer Virus" includes, but is not limited to, "Trojan Horses," "worms" and "time or logic bombs."

    b.    However, in the event that a **DEFINED CAUSE OF LOSS** results from any of the matters described in paragraph a. above, this **POLICY**, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the **POLICY** period to property insured by this **POLICY** directly caused by such **DEFINED CAUSE OF LOSS**.

20.    Electronic Date Recognition Exclusion

    This **POLICY** does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

    a.    the calculations, comparison, differentiation, sequencing or processing of data involving any date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of  the  Insured  or not; or
    b.    any change, alteration or modification involving any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non- computer equipment, whether the property of the Insured or not.

    This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

21.    Loss or damage in the form of, caused by, arising out of, contributed to, or resulting from **FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST;** or any **SPORES** or toxins created or produced by or emanating from such **FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST**.

    However, this exclusion shall not apply provided the **NAMED INSURED** establishes that  the **FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST** is a direct result of a covered loss from a **DEFINED CAUSE OF LOSS or FLOOD** (provided **FLOOD** is a **COVERED CAUSE OF LOSS**) and as a condition of



coverage under this **POLICY** this loss is reported within twelve (12) months from the expiration date of the **POLICY**, and the **LIMIT OF LIABILITY** shall then be limited to the **SUBLIMIT** stated under SECTION I.G.

22.   Loss or damage caused by hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless physical damage not excluded by this **POLICY** results, in which event, this **POLICY** will cover only such resulting damage.

23.   Loss or damage arising out of pre-existing damage as outlined below:
   a.      A **BUILDING** or any part of a BUILDING that is in danger of falling down or caving in,
   b.      Any part of a **BUILDING** that has separated from another part of the **BUILDING**, or
   c.      A **BUILDING** or any part of a **BUILDING** that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

24.   **COSMETIC LOSS** or damage to **ROOF COVERINGS**, siding, windows, doors or guttering by the peril of Hail.

   For the purposes of this exclusion **COSMETIC LOSS** means only that damage that alters the physical appearance of property, but does not result in damage that allows penetration of water through the **ROOF COVERING**, siding, windows, doors or guttering or does not result in failure of the **ROOF COVERING**, siding, windows, doors or guttering to perform it intended function to keep out elements over an extended period of time.

   **ROOF COVERINGS** means 1.) the roof material exposed to the weather; 2.) the underlayments applied for moisture protection; 3.) all flashings required in the replacement of a roof covering.

25.   Loss or damage caused by **EQUIPMENT BREAKDOWN** to vehicles (or any equipment on vehicles), draglines, cranes, excavation or construction equipment.

26.   Terrorism Exclusion

   This **POLICY** excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

   For the purpose of this exclusion, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

   This clause also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism. Such loss or damage is excluded



regardless of any other cause, event or intervention that contributes concurrently or in sequence to the loss or damage.

When coverage is denied by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance and it is agreed the burden of proving the contrary shall be upon the **NAMED INSURED**.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

27.   Exclusion Of Loss Due To Virus Or Bacteria

    a.   The exclusion set forth in subparagraph b. below, applies to all coverage under all forms and endorsements that comprise this **POLICY**, including but not limited to forms or endorsements that cover property damage to **BUILDINGS** or personal property and forms or endorsements relating to **TIME ELEMENT COVERAGES**.

    b.   This **POLICY** will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from **FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST**. Such loss or damage is addressed in a separate exclusion in this POLICY.

    c.   With respect to any loss or damage subject to the exclusion in subparagraph b. above, such exclusion supersedes any exclusion relating to pollutants or contaminants.

    d.   The terms of the exclusion in subparagraph b. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded by this **POLICY**.

28.   Loss or damage from water under the ground surface pressing on, or flowing or seeping through:

    a.   Foundations, walls, floors or paved surfaces;

    b.   Basements, whether paved or not;

    c.   Doors, windows or other openings.

29.   Loss or damage from rain, snow, ice or sleet to personal property in the open.

30.   Seizure or destruction of property by order of governmental authority. However, coverage is provided for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire is a **COVERED CAUSE OF LOSS**.

**StarStone**

Part of the Core Specialty Group

31.    **EQUIPMENT BREAKDOWN** (unless endorsed to this **POLICY**).

32.    Hot Testing;

    a.    which means:

        i.    Start-up, commissioning or performance testing;

        ii.    Any testing involving the introduction of flammable or explosive feedstock or similar media beginning when such feedstock is first introduced; or

        iii.    The rotational operation of any turbine or generator, except for rotational operation by turning gear only when the turbine or generator is not energized.

    b.    Hot Testing does not mean the startup, commissioning or performance testing of:

        i.    Heating;

        ii.    Cooling;

        iii.    Air handling; or

        iv.    Electrical systems that are part of **BUILDING** systems.

33.    Loss, damage, cost, or expense covered under any express or implied guarantee or warranty from a manufacturer or supplier, whether or not such manufacturer or supplier is a **NAMED INSURED** under this **POLICY**.

34.    **NAMED STORM** Restriction: This **POLICY** shall exclude all damage directly or indirectly caused by a **NAMED STORM** that is in existence at the time that written request to bind is given to the **INSURER**, until coverage for such **NAMED STORM** has been bound by written agreement between the **INSURER** and the **NAMED INSURED**.  In addition, no increase in limits or additional coverages will be provided for any insured **LOCATION(S)** threatened by such **NAMED STORM**, until coverage for such **NAMED STORM** has been bound by written agreement between **INSURER** and the **NAMED INSURED**.

35.    Loss or damage to or resulting from the design, manufacture, installation, or use of any Exterior Insulation and Finish System (EIFS) or Dryvit construction, however this    exclusion shall not apply to direct physical damage to EIFS or Dryvit as the direct result of a **DEFINED CAUSE OF LOSS**.

36.    Loss or damage resulting from **FLOOD**, unless a sublimit is shown in Section I. G. 2.

37.    Loss or damage resulting from **EARTHQUAKE**, unless a sublimit is shown in Section I. G. 1.

**SECTION III – INSURED PROPERTY**

A.    **INSURED PROPERTY**: Unless otherwise excluded, this **POLICY** covers the following property while on any **LOCATION** and within 1,000 feet thereof:

1.    Real property, including **BUILDINGS, HARD COSTS** and additions under construction or renovation at an insured **LOCATION**, personal property and equipment in which the **NAMED INSURED** has an insurable interest;

2.    Improvements and betterments to **BUILDINGS** or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real   property;

3.    At the option of the **NAMED INSURED**, personal property, other than motor vehicles, of officers and employees of the **NAMED INSURED**;

4.    Personal property of others, other than motor vehicles, in the care, custody and control of the **NAMED INSURED**, which the **NAMED INSURED** is under obligation to keep insured for physical loss or damage of the type insured against by this **POLICY**;

5.    Contractor's and vendor's interests in property covered to the extent of the **NAMED        INSURED'S** liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any **TIME ELEMENT COVERAGE** provided by this **POLICY**;

6.    Real and personal property and related **TIME ELEMENT LOSS** at **MISCELLANEOUS UNNAMED LOCATION(S)** owned by the **NAMED INSURED** or for which the **NAMED INSURED** is legally responsible for, and within the **COVERAGE TERRITORY** of the **POLICY**. This shall also include personal property of the **NAMED INSURED** while temporarily at **MISCELLANEOUS UNNAMED LOCATION(S)**, including property in exhibitions and salesman's samples.

B.    **PROPERTY EXCLUDED**: This **POLICY** does not insure against loss or damage to:

1.    Currency, money, notes, securities, stamps, furs, jewellery, precious metals, precious stones, and semi- precious stones. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2.    Air, **LAND**, land values, and any substance in or on **LAND**, or any alteration to the natural condition of the **LAND**. However, this exclusion does not apply to the cost of reclaiming, restoring or repairing land improvements, provided the loss is from a  **DEFINED CAUSE OF LOSS**;

3.    Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4.    Standing timber, growing crops, plants, lawns, trees, shrubs or animals. However, this exclusion does not apply to plants, lawns, trees or shrubs, provided the loss is   from a **DEFINED CAUSE OF LOSS**;



5.    Pavements, paved surfaces, walkways, drainage systems or roadways (unless a **SUBLIMIT** is shown in SECTION I.G)

6.    Vehicles licensed for highway use, watercraft, aircraft and railroad rolling stock;

7.    Property sold by the **NAMED INSURED** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8.    Property in transit, except expressly as provided elsewhere in this **POLICY**;

9.    Underground mines or mining shafts and any related mining property and equipment while underground;

10.   Underground pipes, flues or drains; or any property below the lowest basement floor (unless a **SUBLIMIT** is shown in SECTION I.G)

11.   Offshore oil rigs, platforms and property contained therein or thereon;

12.   Satellites and spacecraft while on the launch pad, or after time of a launch;

13.   Dams, dikes, levees, bridges, tunnels, reservoirs, flood retaining walls and canals; except when scheduled as such on the **STATEMENT OF VALUES** on file with the Company;

14.   Docks, piers and wharves; except when scheduled as such on the **STATEMENT OF VALUES** on file with the Company;

15.   Transmission and distribution lines, including support structures, of every type and description; except when located on the insured premises or within one-thousand (1,000) feet thereof;

16.   Personal property in the care, custody, and control of the **NAMED INSURED** when the **NAMED INSURED** is acting as a Bailee, a warehouseman, or a carrier for hire;

17.   Contraband, or property in the course of illegal transportation or trade.

18.   Property of unit owners within individual condominium units, consisting of:

      a.    Personal property and improvements & betterments; and

      b.    Floor coverings, wall coverings and ceiling coverings which only serve that unit.

However, this exclusion shall not apply to:

      c.    Appliances; refrigerators; air conditioning equipment (including air conditioning compressors); heating equipment; cooking ranges; dishwashers; clothes washers/dryers; and fixtures, installations or permanent additions initially installed in accordance with the original plans and specifications; all contained within the units; or



d.    Any property within the individual unit (including the property excluded in a. and b., above) that the condominium association agreement requires be covered by the condominium association.


**SECTION IV – VALUATION**

Except as otherwise provided in this paragraph, adjustment of loss or damage under this **POLICY** shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence. The **NAMED INSURED** may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. However, if the property is not repaired, rebuilt or replaced within two (2) years after the date of loss (unless such requirement is waived in writing), the value of the property will be determined on an **ACTUAL CASH VALUE** basis. In the event the **NAMED INSURED** elects to have the loss or damage settled on an **ACTUAL CASH VALUE** basis, the **NAMED INSURED** may still make a claim on a replacement cost basis, provided the **NAMED INSURED** makes the claim within one hundred eighty (180) days after the loss or damage.

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A.    Stock in process: the cost of raw materials and labor expended, plus the proper proportion of overhead charges.

B.    Finished goods manufactured by the **NAMED INSURED**: the regular cash selling price at the **LOCATION** where the loss occurs, less all discounts and charges to which the merchandise   would have been subject had no loss occurred.

C.    Raw materials, supplies and other merchandise not manufactured by the **NAMED INSURED**:  the replacement cost.

D.    **VALUABLE PAPERS AND RECORDS**: the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not   replaced, this **POLICY** will only pay the blank value of the **VALUABLE PAPERS AND RECORDS**.

E.    **ELECTRONIC DATA AND MEDIA**: the cost of the blank media, plus the costs of copying the **ELECTRONIC DATA AND MEDIA** from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering  or assembling such **ELECTRONIC DATA AND MEDIA**. If the **ELECTRONIC DATA AND MEDIA** is not repaired, replaced or restored, the basis of valuation shall be the cost of the blank     media. However, this **POLICY** does not insure any amount pertaining to the value of such     **ELECTRONIC DATA AND MEDIA** to the **NAMED INSURED** or any other party, even if such **ELECTRONIC DATA AND MEDIA** cannot be recreated, gathered or assembled.

F.    Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal  property of third parties: the replacement cost if replacement cost values have been reported and if actually replaced; otherwise the **ACTUAL CASH VALUE**, but not to exceed the cost to repair or replace the property with material of like kind and quality.



G.      Leasehold improvements and betterments:

1.      If repaired or replaced at the expense of the **NAMED INSURED** within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments.

2.      If not repaired or replaced within two (2) years after the date of the loss, a proportion of the **NAMED INSURED'S** original cost.

The proportionate value will be determined as follows:

a.      Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

b.      Divide the amount determined in subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

c.      If the **NAMED INSURED'S** lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3.      Nothing, if others pay for repairs or replacement.


H.      **FINE ARTS**:

1.      If there is no **STATEMENT OF VALUES** on file with The Company showing the agreed value of the **FINE ARTS**, then the lesser of:

a.      The cost to repair or replace the **FINE ARTS**, or

b.      The appraised value, which will be determined as of the time of the loss.

2.      If there is a **STATEMENT OF VALUES** on file with The Company showing the agreed value than that amount only.

3.      If a **FINE ARTS** article is part of a pair or set, and a physically damaged article cannot be replaced, or cannot be repaired or restored to the condition that existed immediately prior to the loss, then the lesser of the full value of such pair or set or  the agreed value, as per the **STATEMENT OF  VALUE** on file with The Company. **The NAMED INSURED** will surrender the damaged pair or set.

I.      **ACCOUNTS RECEIVABLE**: the amount owed the **NAMED INSURED** which the **NAMED INSURED** is unable to collect from customers, and shall include:

1.      Any collection expenses over and above the normal collection costs;



2.      Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3.      Other reasonable and necessary expenses incurred by the **NAMED INSURED** to recreate **ACCOUNTS RECEIVABLE** records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss, all amounts recovered by the **NAMED INSURED** on **ACCOUNTS RECEIVABLE** for which the **NAMED INSURED** has been paid will belong to and will be paid to the **INSURER(S)** by the **NAMED INSURED** up to the total amount of loss paid. All recoveries in excess of such amounts will belong to the **NAMED INSURED**.

In the event it is possible to reconstruct the **NAMED INSURED'S ACCOUNTS RECEIVABLE** records after they have been physically lost or damaged, so that no shortage in collection of **ACCOUNTS RECEIVABLE** is sustained, the only recoverable loss will be the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

J.      **PROPERTY FOR SALE**: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1.      The cost to repair or replace the damaged property, or

2.      The price at which the property is offered for sale less the market value of the **LAND**. Contractor's tools, machinery (including spare parts and accessories), equipment and vehicles (if covered): **ACTUAL CASH VALUE**, unless an agreed value applies.

K.      Contractor's tools, machinery (including spare parts and accessories), equipment and vehicles (if covered): **ACTUAL CASH VALUE**, unless an agreed value applies.

L.      **PROPERTY IN TRANSIT**: In case of loss, the basis of adjustment shall be

1.      Property shipped to or for the account of the **NAMED INSURED**: the actual invoice to the **NAMED INSURED**, together with such costs and charges as may have accrued and become legally due on such property;

2.      Property which has been sold by the **NAMED INSURED** and has been shipped to or for account of the purchaser (if covered hereunder): the amount of the **NAMED INSURED'S** selling invoice, including prepaid or advanced freight;

3.      Property of others not under invoice: the actual market value at the point of destination on the date of the **OCCURRENCE**, less any charges saved which would have become due and payable upon delivery at destination; or

**StarStone**
Part of the Core Specialty Group

4.    Property of the **NAMED INSURED** not under invoice: valued in accordance with the valuation provisions of this **POLICY** applying at the **LOCATION** from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination

M.    For all other property: At replacement cost if actually replaced; otherwise, the **ACTUAL CASH VALUE**, but not to exceed the cost to repair or replace the property with material of like kind and quality.

With respect to Subparagraphs A. through M., inclusive, unless otherwise specifically stated, the valuations will be computed at the time and place of the loss.

### SECTION V - TIME ELEMENT COVERAGES

This **POLICY** is extended to cover the actual loss sustained by the **NAMED INSURED** during the **PERIOD OF INTERRUPTION** directly resulting from a **COVERED CAUSE OF LOSS** to **COVERED PROPERTY**.

A.    **ACTUAL LOSS SUSTAINED**: In the event the **NAMED INSURED** is prevented from producing goods or from continuing its business operations or services and is unable:

1.    To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2.    To continue business operations or services, all through the use of any property or service owned or controlled by the **NAMED INSURED**, or obtainable from other    sources, whether the property or service is at an insured **LOCATION** or through    working extra time or overtime at any other substitute **LOCATION(S)**, including any    other **LOCATION(S)** acquired for the purpose, then, subject to all other conditions of this **POLICY** not inconsistent herewith, for the actual loss sustained of the following during the **PERIOD OF INTERRUPTION** shall be **COVERED PROPERTY**:

**GROSS EARNINGS** less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, **GROSS EARNINGS** means:

i.    For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

ii.    For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the **NAMED INSURED**;

iii.    Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under property damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the **NAMED INSURED'S** regular customers.



In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the **PERIOD OF INTERRUPTION** and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the **NAMED INSURED'S ORDINARY PAYROLL** expense, unless a specified number of days for **ORDINARY PAYROLL** are shown in SECTION I.G. and values have been included in the **STATEMENT OF VALUES**. In such case, this **POLICY** will cover **ORDINARY PAYROLL** for that number of days only. The number of days need not be consecutive, but must fall within the interruption of production or suspension of business operations or services, or fall within the extension of that period, if an extension is provided. **ORDINARY PAYROLL** means the entire payroll expense for all employees of the **NAMED INSURED** except officers, executives, department managers, employees under contract, and other essential employees.

B.    **PERIOD OF INTERRUPTION**: In determining the amount payable under this coverage, the **PERIOD OF INTERRUPTION** shall be:

1.    The period from the time of physical loss or damage insured against by this **POLICY** to the time when, with the exercise of due diligence and dispatch, either:

   a.    normal operations resume; or

   b.    physically damaged **BUILDINGS** and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage, whichever is less.

   c.    Such period of time shall not be cut short by the expiration or earlier termination date of the **POLICY**.

2.    In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

   a.    To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

   b.    To replace physically damaged or destroyed mercantile stock necessary to resume operations; or

   c.    To replace raw materials and supplies in order to continue operations.

   However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the **PERIOD OF INTERRUPTION**.

3.    For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the

**StarStone**
Part of the Core Specialty Group

amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-  up.

The **PERIOD OF INTERRUPTION** does not include any additional time:

    a.    Required for re-staffing or re-training employees; or

    b.    Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above; or

    c.    Required for making change(s) to the **BUILDINGS**, structures, or equipment for any reason except as provided in the **ORDINANCE OR LAW** coverage, if such coverage is provided by this **POLICY**.

**C.**    **ADDITIONAL TIME ELEMENT COVERAGES**

    1.    **BUILDER'S RISK SOFT COSTS**: For Property under Construction, this **POLICY** is extended to cover **BUILDER'S RISK SOFT COSTS** incurred by the **NAMED INSURED** (up to the **SUBLIMIT OF LIABILITY** shown in SECTION I.G.) arising out of delay of the completion of **BUILDINGS** or additions under construction during the **PERIOD OF INTERRUPTION** that are the result of direct damage from a **COVERED CAUSE OF LOSS.**

        **BUILDER'S RISK SOFT COSTS** means reasonable and necessary costs over and above those that would have been incurred by the **NAMED INSURED** during the **PERIOD OF INTERRUPTION** at the **LOCATION** had no loss occurred, limited to the following:

    a.    construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including, the cost to arrange financing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, and charges by the lenders for the extension or renewal of loans necessary to complete the construction;

    b.    commitment fees, leasing and marketing expenses – the cost of returning any commitment fees r received from any prospective tenant(s) or purchaser(s);

    c.    additional fees for architects, engineers, consultants, attorneys and accountants for the completion of construction, repairs or reconstruction; and

    d.    property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

    2.    **CONTINGENT TIME ELEMENT**: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the **NAMED INSURED** is damaged by a **COVERED CAUSE OF LOSS** under this **POLICY**, and such damage:

    a.    wholly or partially prevents a direct supplier to the **NAMED INSURED** from supplying their goods and/or services to the **NAMED INSURED**; or



b.      wholly or partially prevents a direct customer of the **NAMED INSURED** from accepting the **NAMED INSURED'S** goods and/or services; then this **POLICY** is extended to cover the actual loss sustained by the **NAMED INSURED** during the **PERIOD OF INTERRUPTION** with respect to such real or personal property, if the property of the supplier or customer which sustains loss or damage is of the type of property which would be **COVERED PROPERTY** under this **POLICY**.

This coverage applies to the **NAMED INSURED'S** direct suppliers or direct customers located in the **COVERAGE TERRITORY**.

3.      **EXTENDED PERIOD OF INDEMNITY**: Coverage is provided for such additional length of time as is required to restore the **NAMED INSURED'S** business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a.      the date on which the coverage for loss or damage would otherwise terminate; or
b.      the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed; but in no event for a period of time exceeding the number of days specified in Section I.G. This **EXTENDED PERIOD OF INDEMNITY** does not apply to any additional **TIME ELEMENT COVERAGES**, except **RENTAL VALUE**.

4.      **EXTRA EXPENSE**: This **POLICY** is extended to cover expenses, over and above normal operating expenses, necessarily incurred by the **NAMED INSURED** in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but not for  amounts greater than would have been incurred had the **NAMED INSURED** been unable to make up any lost production or to continue any business operations or services (up to the **SUBLIMIT OF LIABILITY** shown in SECTION I.G.).

The **NAMED INSURED** agrees to use any suitable property or service owned or controlled by the **NAMED INSURED** or obtainable from other sources in reducing the **EXTRA EXPENSE** incurred under this **POLICY**.

5.      **INGRESS & EGRESS**: This **POLICY** is extended to cover the actual loss sustained during the period of time when ingress to or egress from the **NAMED INSURED'S** covered **LOCATION** is prohibited as a direct result of a **COVERED CAUSE OF LOSS** to real property not insured hereunder. The insured physical loss or damage must occur within five (5) statute miles from the **NAMED INSURED'S** covered **LOCATION** in order for coverage to apply. Such period of time begins on the date that ingress to or egress from   real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but  no later than the number of days shown in SECTION I.G.

6.      **INTERRUPTION BY CIVIL OR MILITARY AUTHORITY**: This **POLICY** is extended to cover the actual loss sustained during the period of time when access to the **NAMED INSURED'S** covered **LOCATION** is prohibited by an order of civil or military authority, provided that, such order is a direct result of a **COVERED CAUSE OF LOSS** to real property not insured hereunder. The **NAMED INSURED** physical loss or damage must occur within five (5) statute miles from the **NAMED INSURED'S** covered **LOCATION** in order for coverage to apply. Such period of time begins with the effective date of the

**StarStone**
Part of the Core Specialty Group

order of civil or military authority and ends when the order expires, but no later than the number of days shown in SECTION I.G.

7.     **RENTAL VALUE**: As respects **COVERED PROPERTY** held for rental to others, this **POLICY** is extended to cover the loss sustained during the **PERIOD OF INTERRUPTION** but not exceeding the reduction in **RENTAL VALUE** less charges and expenses which do not necessarily continue. **RENTAL VALUE** means the sum of:

   a.     The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the **NAMED INSURED** including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

   b.     The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the **NAMED INSURED**; and

   c.     The fair **RENTAL VALUE** of any portion of such property which is occupied by the **NAMED INSURED**.

Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

8.     **ROYALTIES**: This **POLICY** is extended to cover loss of income sustained by the **NAMED INSURED** under a royalty, licensing fee, or commission agreement between the **NAMED INSURED** and another party during the **PERIOD OF INTERRUPTION** arising out of direct physical loss or damage by a **COVERED CAUSE OF LOSS** during the term of this **POLICY** to real or personal property of such other party, only if such **ROYALTIES** are shown as such on the **STATEMENT OF VALUES**. When determining the amount payable, consideration will be given to the amount of income derived by the **NAMED INSURED** from such agreements before, and the probable amount of income after, the date of loss or damage.

9.     **SERVICE INTERRUPTION**: This **POLICY** is extended to cover the loss or damage to **COVERED PROPERTY** and **TIME ELEMENT COVERAGE** (provided **TIME ELEMENT COVERAGES** are reported on the **STATEMENT OF VALUES**) resulting from direct physical loss or damage from a **COVERED CAUSE OF LOSS** to: (1) incoming electrical, gas, water and telecommunication equipment and outgoing sewer; or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines; all situated outside the insured **LOCATIONS**.

   a.     However, this extension of coverage **DOES NOT** apply to any loss caused by damage to any utility service listed in (1) or (2) above, if located more than five (5) statute miles from the covered **LOCATION**.

   b.     There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I.G. In such case, the loss shall be measured from date and time of the loss. With respect to any **TIME ELEMENT COVERAGE** provided herein, the **PERIOD OF INTERRUPTION** ends when: (1) incoming electrical, gas, water, or

telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, is restored.

c.      The **SUBLIMIT OF LIABILITY** shown in SECTION I.G. applies to all loss or damage to **COVERED PROPERTY** and/or **TIME ELEMENT COVERAGE**, combined arising out of one **SERVICE INTERRUPTION**. None of the additional **TIME ELEMENT COVERAGES** set forth in Section V apply to the **TIME ELEMENT COVERAGE** provided herein, except **RENTAL VALUE**.

This additional coverage does not include coverage for any increase in loss due to fines or damages for breach of contract or for late or non-completion of orders, or penalties of any nature.

With respect to additional **TIME ELEMENT COVERAGES** 6. & 7., if a **COVERED CAUSE OF LOSS** results in coverage under both additional **TIME ELEMENT COVERAGES**, this **POLICY** will only pay for loss under one of the two additional **TIME ELEMENT COVERAGES**, whichever the **NAMED INSURED** selects.

D.      **ADDITIONAL EXCLUSIONS**: The following are excluded from all of the above described **TIME ELEMENT COVERAGES**:

1.      Idle Periods: Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than physical loss or damage from a **COVERED CAUSE OF LOSS** to which this coverage applies.

2.      Remote Loss:

a.      Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order; or

b.      Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

c.      Any increase in loss due to interference at the **NAMED INSURED'S LOCATION** by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

d.      Nor shall there be any liability under this **POLICY** for any other consequential or remote loss, other than as specifically provided in this SECTION V.

3.      Finished Products - Any loss resulting from loss or damage to finished products manufactured by the **NAMED INSURED** nor for the time required for their reproduction.

4.      Transit - Any loss resulting from loss or damage to property in transit.

5.      Berth and/or Port Blockage - Any loss due to Blockage of a port or berth. Blockage means a blockage of any part of the port or berth arising from an occurrence which results in the sinking or stranding of a ship, or the inability of a ship to gain access to a berth



E.    **TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY**: There shall be no liability under  this  **POLICY**  for more than the Monthly Limitation of Indemnity shown in SECTION I.G. for all **TIME ELEMENT COVERAGES**, except those that have a sublimit in SECTION I.G. **TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY** means the most that will be  paid under this **POLICY** monthly for a  **TIME ELEMENT COVERAGE** loss sustained by the **NAMED INSURED** during the **PERIOD OF INTERRUPTION** directly resulting from a **COVERED CAUSE OF LOSS** to **COVERED PROPERTY**. This **TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY** is payable for each period of thirty (30) consecutive days after the beginning of the Period of Interruption and is calculated by multiplying the **TIME ELEMENT VALUE** in the **STATEMENT OF VALUES** by the fraction shown in SECTION I.G.

When SECTION I.G. **EXTENDED PERIOD OF INDEMNITY** specifies a number of days and a fraction is shown in SECTION I.G. for **TIME ELEMENT MONTHLY LIMIT OF INDEMNITY**, the **TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY** will also apply to each period of thirty (30) consecutive days provided under **EXTENDED PERIOD OF INDEMNITY** specified in SECTION I.G.

## SECTION VI  -  ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this **POLICY**, including  the **DEDUCTIBLES** and **SUBLIMITS OF LIABILITY** corresponding to each such additional coverage shown in SECTION I.G. These additional coverage items are either included or excluded **SUBLIMITS OF LIABILITY** as shown in SECTION I.G. and are part of, and not in addition to **SUBLIMITS OF LIABILITY** in SECTION I.G.1-3. and **LIMITS OF LIABILITY** of this **POLICY**, including, but not limited to, the **EARTHQUAKE, FLOOD, or NAMED STORM SUBLIMITS OF LIABILITY** provided herein, if applicable.

A.    **ACCOUNTS RECEIVABLE**: This POLICY covers any shortage in the collection of **ACCOUNTS RECEIVABLE** directly resulting from a **COVERED CAUSE OF LOSS** to **ACCOUNTS RECEIVABLE** records.

This extension of coverage does not apply to loss due to:

1.    Bookkeeping, accounting or billing errors and omissions; and

2.    Alteration, falsification, manipulation, concealment, destruction, or disposal of **ACCOUNTS RECEIVABLE** records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B.    **BACKUP OF SEWERS AND DRAINS**: This **POLICY** is extended to cover water which backups or discharges from sewers, drains or sumps on the Insured's **LOCATION**. Cause of loss is not considered **FLOOD**, unless such backup or discharge was due to **FLOOD**.

C.    **BUILDERS RISK**: Property in the course of construction or renovation, excluding Soft Costs.

D.    **DEBRIS REMOVAL**: This **POLICY** covers the necessary and reasonable expense of removal from the insured **LOCATIONS** of debris of **COVERED PROPERTY** or  property of  others remaining as a  result of  direct physical loss or damage insured against under this **POLICY** that occurs during the **POLICY** period when the **NAMED**



**INSURED** gives written notice of such direct physical loss or damage, as a condition of coverage no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the **POLLUTANTS OR CONTAMINANTS** therein or thereon, whether or not the contamination results from an insured event.

E.     **ELECTRONIC DATA AND MEDIA**: This **POLICY** is extended to cover direct physical loss or damage to **ELECTRONIC DATA AND MEDIA**.

F.     **ERRORS OR OMISSIONS**: This **POLICY** is extended to cover direct physical loss or damage at **LOCATIONS** within the **COVERAGE TERRITORY** that are owned, leased or operated by the **NAMED INSURED**, if such loss or damage is not payable under this **POLICY** solely due to:

1.     Any error or unintentional omission in the description of the address of the property whether made at the inception of the **POLICY** period or subsequent thereto; or

2.     Failure through any error or unintentional omission to:

    a.     Include any **LOCATION** of the **NAMED INSURED** at the inception of the **POLICY**; or

    b.     Report any newly acquired **LOCATION** before the period of automatic coverage provided under this **POLICY** for **NEWLY ACQUIRED LOCATIONS** expires.

With respect to Subparagraphs 1. and 2. above, this **ERRORS OR OMISSIONS** Additional Coverage does not allow the **NAMED INSURED** to correct any value shown in the **STATEMENT OF VALUES**.

This **POLICY** covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the **NAMED INSURED** when discovered and an additional premium be paid for any **LOCATION** added to the **POLICY**.

There is no coverage under this Paragraph for loss or damage which is covered under **NEWLY ACQUIRED PROPERTY** or **MISCELLANEOUS UNNAMED LOCATIONS** provisions of this **POLICY**.

G.     **FINE ARTS**: This **POLICY** is extended to cover direct physical loss or damage to **FINE ARTS**. However, no coverage is provided for:

1.     Breakage, marring, scratching, chipping or denting of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture, antique jewelry or similar fragile articles, unless such breakage, marring, scratching, chipping or denting is caused by a **DEFINED CAUSE OF LOSS**; or

2.     Physical loss or damage as a result of restoring, repairing or retouching processes.

H.     **FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES**: This **POLICY** covers the following expenses resulting from a **COVERED CAUSE OF LOSS**:

**StarStone**

Part of the Core Specialty Group

1.      Fire brigade charges and any extinguishing expenses which the **NAMED INSURED** incurs;

2.      Loss and disposal of fire extinguishing materials expended. There is no coverage for any costs incurred as a result of a false alarm.

I.      **FUNGUS, MOLD(S), MILDEW, SPORES, YEAST**: Associated losses will be covered if the **NAMED INSURED** establishes that the **FUNGUS, MOLD(S), MILDEW, SPORES OR YEAST** is a direct result of a covered loss from a **DEFINED CAUSE OF LOSS** or **FLOOD** (provided **FLOOD** is a **COVERED CAUSE OF LOSS**) and as a condition of coverage under this **POLICY** this loss is reported within twelve (12) months from the expiration date of the **POLICY**.

J.      **LEASED OR RENTED EQUIPMENT**: This **POLICY** is extended to cover direct physical loss or damage at insured **LOCATIONS** from a **COVERED CAUSE OF LOSS** to equipment that the **NAMED INSURED** has leased and/or rented for which the **NAMED INSURED** is legally liable.

K.      **LEASEHOLD IMPROVEMENTS & BETTERMENTS**: This **POLICY** is extended to cover the value of  undamaged tenant improvements and betterments when the NAMED INSURED'S lease is cancelled by the lessor acting under a valid condition of the lease due to direct physical loss or damage to **BUILDING** or personal property caused by or resulting from a **COVERED CAUSE OF LOSS** at an insured **LOCATION**. No **SUBLIMIT OF LIABILITY** applies to this additional coverage, but in no event will the **POLICY** cover loss in an amount in excess of the applicable **SUBLIMIT OF LIABILITY** specified for the **LOCATION**, if any.

L.      **LEASEHOLD INTEREST**: If **COVERED PROPERTY** is: (1) rendered wholly or partially un-tenantable by a **COVERED CAUSE OF LOSS** during the **POLICY** period and (2) the **NAMED INSURED'S** lease is cancelled by a party, other than the **NAMED INSURED**, or an entity with any common ownership of the **NAMED INSURED**, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed **COVERED PROPERTY** is located, then this **POLICY** is extended to cover **THE INTEREST OF THE INSURED AS LESSEE** (as defined below) or **THE INTEREST OF THE INSURED AS LESSOR** (as defined below), whichever is applicable, but only for the first three (3) months succeeding the date of the loss and the **NET LEASE INTEREST** (as defined below) shall be paid for the remaining months of the unexpired lease.

1.      Recovery under this additional coverage shall be the pro-rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the **NAMED INSURED'S** interest in:

a.      The amount of bonus paid by the **NAMED INSURED** for the acquisition of the lease not recoverable under the terms of the lease;

b.      Improvements and betterments to real property which are not covered under any other section of this **POLICY**; and

c.      The amount of advance rental paid by the **NAMED INSURED** and not recoverable under the terms of the lease.

2.      Definitions: The following terms, wherever used in this Paragraph H. shall mean:



a.    The **INTEREST OF THE INSURED AS LESSEE** is defined as:

i.    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

ii.    the rental income earned by the **NAMED INSURED** from sublease agreements, to the extent not covered under any other section of this **POLICY**, over and above the rental expenses specified in the lease between the **NAMED INSURED** and the lessor.

b.    The **INTEREST OF THE INSURED AS LESSOR** is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is cancelled by the lessee, to the extent not covered under any other section of this **POLICY**.

c.    **NET LEASE INTEREST** is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the **INTEREST OF THE INSURED LESSEE OR LESSOR.**

There shall be no liability under this **POLICY** for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the **NAMED INSURED** exercising any option to cancel the lease. Furthermore, the **NAMED INSURED** shall use due diligence, including all things reasonably practicable, to diminish loss under this additional coverage.

M.    **LIMITED POLLUTION COVERAGE**: This **POLICY** is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **POLLUTANTS OR CONTAMINANTS** from **LAND** or water at an insured **LOCATION** when such **LAND** or water is contaminated or polluted due to a **COVERED CAUSE OF LOSS** that occurs during the **POLICY** period, provided that, as a condition of coverage, such expenses are reported within 180 days of the date of direct physical loss or damage.

N.    **LOCK REPLACEMENT**: This **POLICY** covers the necessary expense to repair or replace the exterior or interior door locks of a covered **BUILDING**:

1.    If the door keys are stolen in a covered theft loss; or

2.    When the **COVERED PROPERTY** is damaged, and the door keys are stolen by burglars.

O.    **MISCELLANEOUS UNNAMED LOCATION(S):** If a sublimit is shown in SECTION I.G.., this policy covers a **LOCATION** that has not been included in the **STATEMENT OF VALUES** on file with the Company and has not been reported to the Company as required by the **POLICY** provisions.

There is no coverage under this Paragraph for loss or damage which is covered under the **ERRORS OR OMISSIONS** or **NEWLY ACQUIRED PROPERTY** provisions of this **POLICY**.

P.    **NEWLY ACQUIRED PROPERTY:** This **POLICY** covers real or personal property of the type insured under this **POLICY** for the perils insured under this **POLICY** that is rented, leased, or purchased by the **NAMED INSURED**



after the inception date of this **POLICY**. Coverage under this additional coverage ceases at the earlier of the following dates:

1.    Number of days shown in SECTION I.G. from the date of acquisition or lease of such property; or

2.    When the newly acquired property is covered by this **POLICY**; or

3.    When the Company notifies the **NAMED INSURED** that it will not bind the newly acquired property.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the **ERROR OR OMISSIONS** or **MISCELLANEOUS UNNAMED LOCATIONS** provisions of this **POLICY**.

Q.    **ORDINANCE OR LAW**: In the event of direct physical loss or damage under this **POLICY** that results in the enforcement of any **LAW, ORDINANCE**, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the following is covered under this **POLICY**:

1.    Coverage A: For the loss in value of the undamaged portion of the **BUILDING** as a consequence of enforcement of an **ORDINANCE OR LAW** that requires demolition of undamaged parts of the same **BUILDING**.

2.    Coverage B: For the cost to demolish and clear the site of undamaged parts of the same **BUILDING**, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

3.    Coverage C: For the increased cost of repair or replacement of the  damaged  and  undamaged **BUILDING** on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such **ORDINANCE OR LAW** regulating the repair or reconstruction of the damaged property on the same site. However, there is no coverage for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced.

4.    Coverage D: For the additional loss in **TIME ELEMENT COVERAGES** (if covered), that the **NAMED INSURED** sustains during the increased period of suspension of operations caused by or resulting from a consequence of enforcement of an **ORDINANCE OR LAW**.

Excluded from this coverage are any costs of demolition or increased costs of reconstruction, repair, debris removal or loss of use (including any **TIME ELEMENT COVERAGES**) necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

R.    **OUTDOOR PROPERTY**: This **POLICY** is extended to cover direct physical loss or damage to signs, pools, pool equipment, outdoor fences, lights and light poles, and radio and radio and television antennas (including satellite dishes) not reported in the **STATEMENT OF VALUES** if a **SUBLIMIT OF LIABILITY** is shown in SECTION I. G. If a percentage deductible applies in the event of a loss to **OUTDOOR PROPERTY**, the percentage shall apply against the greater of the sublimit shown in SECTION I.G. or the replacement cost value of the affected property.



S.    **PAIRS OR SETS**: If two or more components or parts are necessary for a whole or complete product, then this **POLICY** covers the reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this **POLICY** to the other insured components or parts of such products.

T.    **PERSONAL PROPERTY OF OTHERS**: If not included in the **STATEMENT OF VALUES** or other documentation on file with the Company in order to be included as **INSURED PROPERTY** additional coverage to apply as stated in SECTION I.G.

U.    **PLANTS, LAWNS, TREES OR SHRUBS**: If there is a sublimit shown in SECTION I. G., then this policy will cover loss or damage caused by a **COVERED CAUSE OF LOSS** to **PLANTS, LAWNS, TREES or SHRUBS.**

V.    **PROFESSIONAL FEES**: This **POLICY** is extended to cover reasonable and necessary **CLAIM PREPARATION COSTS** (as defined below) incurred by the **NAMED INSURED** at the request of **INSURER** for the purpose of determining the extent or amount of insured loss or damage as a result of a **COVERED CAUSE OF LOSS** under this **POLICY**, provided that, the **NAMED INSURED** obtains the prior written approval for the vendor to be engaged.

    1.    **CLAIM PREPARATION COSTS** means:

        a.    The cost of taking inventory and the cost of gathering and preparing other data to substantiate the extent or amount of loss or damage; and

        b.    The cost of services provided by accountants, contractors and engineers solely for the purpose of determining the extent or amount of loss.

    2.    **CLAIM PREPARATION COSTS** does not mean and excludes:

        a.    Legal fees, charges and expenses;

        b.    Fees and costs of a public claim's adjuster, claim consultant, insurance broker or agent (except forensic accounting services), or any person acting for or on behalf of a public claims adjuster, claim consultant, or insurance broker or agent;

        c.    Costs associated with negotiation or presentation of any claim or part of a claim that is disputed or denied;

        d.    Costs associated with establishing that any claim or part of a claim is covered by the **POLICY**;

        e.    Costs which represent overhead or operating expense of any **NAMED INSURED**, including salaries of such **NAMED INSURED'S** employees.

W.    **PROPERTY REMOVED FROM INSURED LOCATIONS**: This **POLICY** will cover loss or damage caused by a **COVERED CAUSE OF LOSS** to personal property of the **NAMED INSURED** at any **LOCATION** within the **COVERAGE TERRITORY** when such personal property is removed from the insured **LOCATIONS** for the purpose of being repaired or serviced, excluding:

    1.    Personal property insured under another policy or floater;



2.      Personal property excluded under this **POLICY**;

3.      Personal property removed from the insured **LOCATIONS** for normal storage or processing or preparation for sale or delivery.

X.      **PROTECTION AND PRESERVATION OF PROPERTY**: In case of actual or imminent direct physical loss or damage by a **COVERED CAUSE OF LOSS**, the expenses incurred by the **NAMED INSURED** in taking reasonable and necessary actions for the temporary protection and preservation of **COVERED PROPERTY** hereunder shall be added to the total physical loss or damage otherwise recoverable under this **POLICY** and be subject to the applicable **DEDUCTIBLE** and **SUBLIMIT OF LIABILITY** shown in SECTION I.G.

Y.      **RECLAIMING, RESTORING, OR REPAIRING LAND IMPROVMENTS**: This **POLICY** is extended to cover the cost of reclaiming, restoring or repairing land improvements, provided the loss is from a **DEFINED CAUSE OF LOSS** subject to the applicable **DEDUCTIBLE** and **SUBLIMIT OF LIABILITY** shown in SECTION I.G.

Z.      **REWARD REIMBURSEMENT**: This **POLICY** covers monetary rewards for information that leads to a criminal conviction in connection with loss or damage to **COVERED PROPERTY** by a **COVERED CAUSE OF LOSS**, up to amounts agreed by the **INSURER(S)** and the **NAMED INSURED.**

AA.     **SIDEWALKS, PAVED SURFACES, ROADWAYS**: This **POLICY** is extended to cover sidewalks, paved surfaces and roadways, cost of excavation, grading, backfilling or filling from a **COVERED CAUSE OF LOSS** at insured **LOCATIONS**.

BB.     **SPOILAGE**: This **POLICY** is extended to cover **SPOILAGE** as a direct result of a **COVERED CAUSE OF LOSS** and the additional exclusions listed below. This **POLICY** will pay for direct physical loss or damage to:

1.      **PERISHABLE GOODS** due to **SPOILAGE**;

2.      **PERISHABLE GOODS** due to contamination from the release of refrigerant, including but not limited to ammonia;

3.      **PERISHABLE GOODS** due to **SPOILAGE** caused by a **COVERED CAUSE OF LOSS** to equipment that is owned by a utility, landlord, or other supplier of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

If the **NAMED INSURED** is unable to replace the **PERISHABLE GOODS** before their anticipated sale, payment will be determined on the basis of the sales price of the **PERISHABLE GOODS** at the time of the loss, less discounts and expenses that otherwise would have  been incurred. Otherwise, payment will be determined in accordance with the Valuation (Section IV) provision of this **POLICY**.

**PERISHABLE GOODS** means personal property:

a.      maintained under controlled conditions for its preservation, and

b.      susceptible to loss or damage if the controlled conditions change.



Additional Exclusions: There shall be no liability under this **POLICY** for loss or damage caused by or resulting from:

1.     The disconnection of any refrigerating, cooling or humidity control system from the source of power.

2.     The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

CC.    **TRANSIT**: This **POLICY** is extended to cover personal property, not otherwise excluded by this **POLICY**, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1.     Personal property shipped to customers on F.O.B., C & F, or similar terms. The **NAMED INSURED'S** contingent interest in such shipments is admitted.

2.     The interest of the **NAMED INSURED** in, and legal liability for, personal property of others in the actual or constructive custody of the **NAMED INSURED**.

3.     Personal property of others sold by the **NAMED INSURED** which the **NAMED INSURED** has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage:

a.     Property insured under import or export ocean cargo policies.

b.     Waterborne shipments to and from the **COVERAGE TERRITORY**.

c.     Shipments made by air, unless via regularly scheduled airlines.

d.     Property shipped by mail.

e.     Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the **NAMED INSURED** when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

f.     Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the **COVERAGE TERRITORY** until delivered at destination.
Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

**StarStone**
Part of the Core Specialty Group

This additional coverage does not cover or apply to delay, loss of market, or any **TIME ELEMENT COVERAGE**.

Permission is granted to the **NAMED INSURED** without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The **NAMED INSURED** may waive subrogation against railroads under sidetrack agreements, but the **NAMED INSURED** shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

DD.  **VALUABLE PAPERS AND RECORDS**: This **POLICY** is extended to cover **VALUABLE PAPERS AND RECORDS**.

EE.  **WIND DRIVEN PRECIPITATION**: Loss or damage by rain, snow, or dust, driven by wind , to the interior of any **BUILDING** or structure, or the property inside the **BUILDING** or structure, without the **BUILDING** or structure first sustaining wind or hail damage to its roof or walls through which the rain, snow, sand, or dust enters.


### SECTION VII – CONDITIONS

A.  **ABANDONMENT**: There can be no abandonment to anyone of any insured property.

B.  **ADJUSTMENT OF LOSSES** and **NAMED INSURED** Clause: Loss or damage shall be adjusted with and payable to the **NAMED INSURED**, subject to any Certificates of Insurance on file with the Company which require payment to a **MORTGAGEE** or **LOSS PAYEE**.

If this **POLICY** insures more than one entity, the **NAMED INSURED** is authorized to act on behalf of all other insureds with respect to their rights, obligations and duties under this **POLICY**. Payment of loss or return premium under this **POLICY** to the **NAMED INSURED** shall constitute payment under this **POLICY** with respect to all insureds.

C.  **ARBITRATION CLAUSE**: All matters in dispute between the **NAMED INSURED** and the **INSURER**(S) (hereinafter referred to as "the parties") in relation to this insurance, including this **POLICY'**S formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty (30) days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his or her Arbitrator and give written notice thereof to the Respondent. Within thirty (30) days of receiving such notice from Claimant, the Respondent shall appoint his or her Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

If the two Arbitrators fail to agree on the selection of the umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list of three Umpire candidates, each Arbitrator shall select one name from the list submitted by the other and the Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators. Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons presently or formerly employed or engaged in a senior position in Insurance underwriting or claims.



The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

Any Arbitration hearing shall take place in Nashville, Tennessee, unless some other locale is agreed by the Arbitrator or Arbitration Tribunal.

The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

D.    **ASSIGNMENT**: The **NAMED INSURED** may not assign this **POLICY** without prior written consent.

E.    **BRANDS AND LABELS**: If branded or labelled merchandise covered by this **POLICY** is physically damaged and the **INSURER** elects to take all or any part of such merchandise at the value established by the terms of this **POLICY**, the **NAMED INSURED** may, at their own expense, stamp "**SALVAGE**" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the **NAMED INSURED** must re-label the merchandise or containers in compliance with the requirements of law.

F.    **CANCELLATION AND ADDITIONS OR DELETIONS**:

    1.    This **POLICY** can be cancelled by the **NAMED INSURED** by providing the Company with:

        a.    An advanced written request for cancellation stating when the cancellation shall be effective, and

        b.    The original **POLICY** or a lost policyholder release signed by the **NAMED INSURED** or its legal representative.

    2.    This **POLICY** may be cancelled by the Company by giving to the **NAMED INSURED** at least ninety (90) days written notice of cancellation or in the case of non-payment of premium or material mis-statement, at least ten (10) days written notice of cancellation.

    3.    The cancellation will be effective even if the Company have not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

    4.    If this **POLICY** is cancelled, the Company will send the **NAMED INSURED** any premium refund due per the below Earned Premium stipulations.



5.    Earned Premium:

    a.    If the **NAMED INSURED** cancels this **POLICY**, removes a **LOCATION** or reduces the amount of coverage on a **LOCATION,** a minimum premium of 35% of the original **POLICY** premium shall become earned.

        Failure of the **NAMED INSURED** to make timely payment of premium shall be considered a request by the **NAMED INSURED** for the Company to cancel. In the event of such cancellation by the Company for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the **NAMED INSURED** remits the full premium due within 10 days of receiving it.

    b.    For **LOCATIONS** not "**EXPOSED TO HURRICANE**": If the **NAMED INSURED** cancels this **POLICY**, removes a **LOCATION** or reduces the amount of coverage on a **LOCATION**, the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the **POLICY**.

    c.    For **LOCATIONS** "**EXPOSED TO HURRICANE**": If the **NAMED INSURED** cancels this **POLICY**, removes a **LOCATION** or reduces the amount of coverage on a **LOCATION** and coverage existed any time during the period of June 1st to November 30th, the amount of premium the Company will return will be a percentage of the total premium determined using the below.

The Unearned Premium is the **LOCATION** premium times the Unearned Factor noted below:

| Days Policy In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

    d.    Subject to receipt of closing documents within 30 days of closing, this **POLICY** allows pro-rata return premium for **LOCATIONS** sold, but not for loss of a management contract (unless the management contract is lost due to the sale of the property).

    e.    Subject to receipt of closing documents, this **POLICY** allows pro-rata additional premium for **LOCATIONS** purchased during the policy term.



f.     For **LOCATIONS** "**EXPOSED TO HURRICANE**", if added or coverage increased at an existing **LOCATION,** during the term of the **POLICY** and coverage exists at any time during the period of June 1st to November 30th, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in c. above. Otherwise, it shall be pro-rata.

g.     **LOCATIONS** of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in c. above. **LOCATIONS** of differing kind or quality or **LOCATIONS** in Dade, Broward, Palm Beach, Pinellas, and Hillsborough counties of Florida must be approved by the Company prior to attachment.

h.     If a **LOCATION** is "**EXPOSED TO HURRICANE**" the provisions of this clause replace any short rate provisions stipulated in this **POLICY**, all subject to the Minimum Earned Premium provisions.

i.      "**EXPOSED TO HURRICANE**" is defined to include any Location within 100 miles of the closest saltwater of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands.

j.      Coverage cannot be increased, nor additional **LOCATIONS** added if they are "**EXPOSED TO HURRICANE**" and a **NAMED STORM** is in existence, unless with the express written consent of the Company.

k.     Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the **POLICY**.

l.      Proof of mailing will be sufficient proof of notice of cancellation.

m.    In the event of a total loss or constructive total loss to **COVERED PROPERTY** by a **COVERED CAUSE OF LOSS**, the premium applicable to that **COVERED PROPERTY** shall be fully earned and no return premium will be due to the **NAMED INSURED**.

G.     **CONTROL OF DAMAGED MERCHANDISE**: The **NAMED INSURED**, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this **POLICY** are fit for normal intended use or consumption. No goods so deemed by the **NAMED INSURED** to be unfit for consumption shall be sold or otherwise disposed of except by the **NAMED INSURED** or with the **NAMED INSURED'S** consent, but the **NAMED INSURED** shall allow the **INSURER**(S) any salvage obtained by the **NAMED INSURED** on any sale or other disposition of such goods. The **NAMED INSURED** shall have full right to the possession of and retain control of all goods involved in any loss under this **POLICY**.

H.     **CURRENCY**: Any amount of money specified in the **POLICY**, including **LIMITS OF LIABILITY**, **DEDUCTIBLES** and **PREMIUMS** shall be considered to be in the currency of the United States of America.

I.      **DIVISIBLE CONTRACT**: Subject to Condition N. below, if the **LOCATIONS** described in this **POLICY** include two or more **BUILDINGS** or the contents of two or more **BUILDINGS**, the breach of any condition of this **POLICY** in respect to any one or more of the **BUILDINGS** insured or containing the **COVERED PROPERTY**, shall not prejudice the right to recover for physical loss or damage occurring in any **BUILDING** insured or containing the **COVERED PROPERTY** where, at the time of such loss or damage, a breach of condition does not exist.

**StarStone**
Part of the Core Specialty Group

J.    **INCREASE IN HAZARD**: If the circumstances in which this insurance was entered into shall be altered or if the risk shall be materially increased, the **NAMED INSURED** shall as soon as possible give notice in writing to **INSURER.**

The Company is not liable for any loss at an Insured Location to the extent that such loss is a result of or in connection with a material increase in hazard over which the Insured has control or knowledge. Any material **INCREASE IN HAZARD** at one or more Insured Locations will not affect coverage at other Insured Locations where, at the time of loss or damage, the increase in hazard does not exist.

K.    **INSPECTION AND AUDIT:** The **NAMED INSURED** shall permit, at all reasonable times during this **POLICY** period, inspections of all **COVERED PROPERTY**. Neither this right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking, on behalf of or for the benefit of the **NAMED INSURED** or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule, or regulation.

The **NAMED INSURED** shall also permit examination and audit of the **NAMED INSURED'S** books and records at any reasonable time during the **POLICY** period and within one year after the **POLICY** termination, as long as such examination and audit relate to the subject matter of this **POLICY**.

L.    **LEGAL ACTION AGAINST US:**

You may not commence, bring or cause to be commenced or bring legal action, claim, demand or suit against us unless:

1.    There has been full compliance with all terms of the terms and conditions and the terms and conditions of the lead policy; and

2.    The legal action, claim, demand or suit is brought within two (2) years after the date of the occurrence or event which occasioned the direct physical loss or damage or within the shortest limit of time permitted by applicable laws.

3.    If your claim for **WINDSTORM OR HAIL**, including **NAMED STORM**, is denied, suit musts be brought within 1 year of the denial of the claim.

M.    **MORTGAGEES (OR TRUSTEES), LENDER'S LOSS PAYEES, AND LOSS PAYEES**:

1.    Loss, or damage, if any, under this **POLICY** shall be payable to:

    a.    Any **LENDER'S LOSS PAYEE** or **LOSS PAYEE** as its interest may appear; and

    b.    Any **MORTGAGEE (OR TRUSTEE)** as its interest may appear under all present or future mortgages upon the insured property in which the aforesaid may have an interest as **MORTGAGEE (OR TRUSTEE)**, in order of precedence of said mortgages.

2.    As to the interest of the **MORTGAGEE (OR TRUSTEE) OR LENDER'S LOSS PAYEE** only, this insurance shall not be invalidated by any act or neglect of the **NAMED INSURED** nor by any foreclosure or other proceedings or notice of sale relating to said property nor by any change in the title or ownership of said property, nor by the occupation of the insured **LOCATIONS** for purposes more



hazardous than are permitted by this **POLICY**; provided, that in case the **NAMED INSURED** shall neglect to pay any premium due under this **POLICY**, the **MORTGAGEE (OR TRUSTEE) OR LENDER'S LOSS PAYEE** shall, on demand, pay the same.

The **MORTGAGEE (OR TRUSTEE) OR LENDER'S LOSS PAYEE** must notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the **MORTGAGEE (OR TRUSTEE) OR LENDER'S LOSS PAYEE** and, unless such use is permitted by this **POLICY** and the **MORTGAGEE (OR TRUSTEE) OR LENDER'S LOSS PAYEE** shall, on demand, pay the premium for such increased hazard; otherwise, this entire Clause 2. shall be null and void.

3.   **COVERAGE** hereunder may be suspended [which shall include any **COVERAGE** applying to the interest of the **MORTGAGEE (OR TRUSTEE), LENDER'S LOSS PAYEE OR LOSS PAYEE**] on any machine, vessel or part thereof in accordance with the Suspension Clause of **EQUIPMENT BREAKDOWN** (if such coverage is provided by endorsement to this **POLICY**). The Company agrees to furnish the **MORTGAGEE (OR TRUSTEE), LENDER'S LOSS PAYEE, OR LOSS PAYEE** with a copy of the suspension notice to the **MORTGAGEE'S (OR TRUSTEE'S), LENDER'S LOSS PAYEE'S OR LOSS PAYEE'S** address.

4.   Whenever the **MORTGAGEE (OR TRUSTEE), LENDER'S LOSS PAYEE OR LOSS PAYEE** is paid any sum for loss under this **POLICY** and the **INSURER(S)** shall claim that, as to the **NAMED INSURED**, no liability therefor existed, such **INSURER(S)** shall, to the extent of such payment, be subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at their option pay to the **MORTGAGEE (OR TRUSTEE), LENDER'S LOSS PAYEE OR LOSS PAYEE**, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of all rights and securities; but no subrogation shall impair the right of the **MORTGAGEE (OR TRUSTEE), LENDER'S LOSS PAYEE, OR LOSS PAYEE,** to recover the full amount of the **MORTGAGEE'S (OR TRUSTEE'S), LENDER'S LOSS PAYEE'S, OR LOSS PAYEE'S** claim.

N.   **MISREPRESENTATION AND FRAUD**: This entire **POLICY** shall be void if, whether before or after a loss, the **NAMED INSURED** has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the **NAMED INSURED** therein, or in case of any fraud, or false swearing by the **NAMED INSURED** relating thereto.

O.   **OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE**: In the event there is **OTHER INSURANCE** covering loss or damage insured under this **POLICY**, then this **POLICY** shall apply only as excess and in no event as contributory insurance (unless this **POLICY** is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the **NAMED INSURED** to purchase **EXCESS INSURANCE** over the limits provided by this **POLICY**, and underlying insurance on all or any part of the **DEDUCTIBLES** of this **POLICY**.

P.   **PROTECTION AND PRESERVATION OF PROPERTY**: In case of actual or imminent direct physical loss or damage by a **COVERED CAUSE OF LOSS**, the expenses incurred by the **NAMED INSURED** in taking reasonable and necessary actions for the temporary protection and preservation of **COVERED PROPERTY** hereunder shall be added to the total physical loss or damage otherwise recoverable under this **POLICY** and be subject to the applicable **DEDUCTIBLE**, sublimit of liability and the **POLICY LIMIT**.



Q.   **REINSTATEMENT OF LIMITS**: Except for any **COVERED CAUSE OF LOSS** which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this **POLICY** for any subsequent covered loss.

R.   **REQUIREMENTS IN CASE OF LOSS**: The **NAMED INSURED** shall:

1.   Give immediate written notice of any loss or damage;

2.   Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3.   Protect the property from further loss or damage;

4.   Separate the damaged and undamaged personal property;

5.   Maintain such property in the best possible order;

6.   Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7.   Furnish all other documents or insurance policies that may be reasonably required;

8.   Allow access and inspection of any of the damaged or undamaged **COVERED PROPERTY**; and

9.   Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

10.  All claims of loss due to **WINDSTORM OR HAIL**, including **NAMED STORM**, must be made within 2 years of the expiration date of this policy regardless of when loss or damage was discovered or the date of the **OCCURRENCE**.

Within ninety (90) days after the loss, unless such time is extended in writing, the **NAMED INSURED** shall provide proof of loss, signed and sworn to by the **NAMED INSURED**, stating the knowledge and belief of the **NAMED INSURED** as to the following:

1.   The time and origin of the loss;

2.   The interest of the **NAMED INSURED** and of all others in the property;

3.   The value of each item thereof determined in accordance with the **VALUATION PROVISIONS** of this **POLICY** and the amount of loss thereto and all encumbrances thereon;

4.   All other contracts of insurance, whether collectible or not, covering any of said property; and

5.   Any changes in the title, use, occupation, **LOCATION**, possession or exposures of said property subsequent to the issuance of this **POLICY**, by whom and for what purpose any **BUILDING** herein

**StarStone**

Part of the Enstar Specialty Group

described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

S.    **SALVAGE AND RECOVERIES**: **All TIME ELEMENT VALUES**, **SALVAGES**, **RECOVERIES** and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this **POLICY**, shall reduce the loss accordingly.

T.    **SERVICE OF SUIT:** In the event of our failure to pay any amount claimed to be due under this Policy, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United States in which a suit for those amounts may be brought. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in such suit may be made upon:

StarStone Specialty Insurance Co.
Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.starstone.com

or his or her representative, and that in any suit instituted against us with respect to this Policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

To the extent required by the express provisions of any statute of any state, territory, or district of the United States, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy, and we hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

U.    **SETTLEMENT OF CLAIMS**: The amount of loss under this **POLICY** shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted and ascertainment of the amount of loss is made either by agreement with the **NAMED INSURED** or an amount is determined by binding Arbitration in accordance with the provisions of this **POLICY**.

The **INSURER** shall have the option to take all or any part of the property at the agreed or arbitrated value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so within sixty (60) days after receipt of the proof of loss herein required.

V.    **SEVERAL LIABILITY CLAUSE**:



1.    The **INSURER'S LIMIT OF LIABILITY** under this **POLICY** for covered losses is several and not joint with other insurers party to this contract. The **INSURER** is liable only for the proportion of liability it has underwritten. The **INSURER** is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is the **INSURER** otherwise responsible for any liability of any other insurer that may underwrite this **POLICY**.

2.    The **INSURER's** liability may not be increased in the event that any other insurer or other party to this contract who for any reason does not satisfy all or part of its obligations.

W.    **STATEMENT OF VALUES**: The **NAMED INSURED** shall provide the Company, at **POLICY** inception and each subsequent anniversary date of this **POLICY**, a **STATEMENT OF VALUES** which consists of the current 100% **PROPERTY** and **TIME ELEMENT VALUES** for all insured **LOCATIONS**.

Such values shall be reported separately for each **LOCATION**, with separate figures shown for each type of coverage at each **LOCATION**. The property values shall be shown on a **REPLACEMENT COST BASIS** for property which is covered on a **REPLACEMENT COST BASIS** and on an **ACTUAL CASH VALUE** basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the **VALUATION** (Section IV) clause contained in this **POLICY** and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. **TIME ELEMENT VALUES** (if covered) shall be provided in accordance with the terms of the applicable **TIME ELEMENT COVERAGES** provisions.

Upon inception and at each anniversary date of this **POLICY**, the Annual Premium shall be due and payable to the Company. Receipt of said **STATEMENT OF VALUES** by the Company shall be considered as authorization by the **NAMED INSURED** for premiums under this **POLICY** to be calculated.

The premium for this **POLICY** is based upon the **STATEMENT OF VALUES** on file with the Company or attached to this **POLICY**.

X.    **SUBROGATION**: An assignment of all rights of recovery against any party for loss may be required from the **NAMED INSURED** to the extent that payment has been made, but the assignee shall not acquire any rights of recovery which the **NAMED INSURED** has expressly waived in writing prior to loss nor shall such waiver in writing affect the **NAMED INSURED'S** rights under this **POLICY**.

**INSURER** does waive rights of recovery against any unit-owner of a Condominium Association.

However, notwithstanding the foregoing, **INSURER** shall be subrogated to all the **NAMED INSURED'S** rights of recover against:

1.    any Architect or Engineer, whether named as a **NAMED INSURED** or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

2.    any manufacturer or supplier of machinery, equipment or other property, whether named as a **NAMED INSURED** or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.



Any recovery as a result of subrogation proceedings arising out of an **OCCURRENCE**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the **NAMED INSURED** in the proportion that the **DEDUCTIBLE** amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The **NAMED INSURED** will cooperate with the **INSURER** and, upon their request, will:

1.    Attend hearings and trials; and

2.    Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

Y.    **TITLES OF PARAGRAPHS**: The titles of the various paragraphs of this **POLICY** (and of endorsements included in this **POLICY**) are solely for reference and shall not in any way affect the provisions to which they relate.

Z.    **VACANCY**: The **NAMED INSURED** has permission to cease business operations or to have any insured **BUILDING** vacant or unoccupied, provided that the fire protection, security and alarm services are maintained. The insured **BUILDING** is considered vacant or unoccupied when 70% or more of its square footage is not rented or does not contain adequate **COVERED PROPERTY** to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations. The **NAMED INSURED** must notify **INSURER** no later than ninety (90) days after the cessation of business operations or vacancy. If not so notified within ninety (90) days, the **DEDUCTIBLE** shall be the greater of: (a) double the applicable peril **DEDUCTIBLE**; (b) or $100,000. This restriction shall not apply to any **BUILDING** in the course of construction or renovation.

Beyond the 90th consecutive day of cessation of operations, vacancy or not occupied, whether or not that period of time commenced prior to or during the Policy Period, any loss or damage caused by or resulting, directly or indirectly, from **VANDALSIM AND MALICIOUS MISCHIEF**, sprinkler leakage, glass breakage, water, theft or attempted theft is excluded; however these restrictions in coverage will not apply if the Insured maintains existing heat, fire protection, security and alarm services.

**SECTION VIII - POLICY DEFINITIONS**

A.    **ACTUAL CASH VALUE**: means the amount it would cost to repair or replace **COVERED PROPERTY**, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **ACTUAL CASH VALUE** applies to valuation of **COVERED PROPERTY** regardless of whether that property has sustained partial or total loss or damage.



The **ACTUAL CASH VALUE** of the lost or damaged property may be significantly less than its replacement cost.

B.  **AIRCRAFT OR VEHICLE IMPACT** means only physical contact by or from an aircraft, spacecraft, self-propelled missile or vehicle, including objects falling from same.

C.  **AVERAGE DAILY VALUE (ADV): AVERAGE DAILY VALUE** means the total 100% **TIME ELEMENT VALUE** that would have been projected for the **PERIOD OF INTERRUPTION** for the **LOCATION(S)** where the physical loss or damage occurs, had no physical loss or damage occurred, divided by the number of working days in such **PERIOD OF INTERRUPTION**. The sum shall include all **TIME ELEMENT VALUES** to which the operations of the **LOCATION(S)** directly or indirectly contribute.

D.  **BUILDING** means a fully enclosed permanent structure with walls and a continuous roof.

E.  **BACKUP OF SEWERS AND DRAINS** means Water which backups or discharges from sewers, drains or sumps on the Insured's **LOCATION**. Cause of loss is not considered **FLOOD**, unless such backup or discharge was due to **FLOOD** as defined in this **POLICY**.

F.  **CLOSING DOCUMENTS** means proof of sale and transfer of ownership documentation.

G.  **COLLAPSE** means an abrupt falling down or caving in of a **BUILDING** or any part of a **BUILDING** with the result that the **BUILDING** or part of the **BUILDING** cannot be occupied for its current intended purpose. The **COLLAPSE** must be caused by or resulting from one or more of the following:

1.  **BUILDING** decay that is hidden from view; however, coverage will not be provided if the presence of such decay is known to the Insured prior to collapse;

2.  Insect or vermin damage that is hidden from view, however, coverage will not be provided if the presence of such damage is known to the **NAMED INSURED** prior to collapse;

3.  Use of defective material or methods in construction, remodelling or renovation, in the event that the abrupt collapse occurs during the course of construction, remodelling or renovation.

4.  Use of defective material or methods in construction, remodelling or renovation, in the event that the abrupt collapse occurs after the construction, remodelling or renovation is complete, but only if the collapse is caused in part by:

    a.  A cause of loss listed in I.G. as stated above;

    b.  One or more of the **DEFINED CAUSES OF LOSS**;

    c.  Breakage of BUILDING glass;

    d.  Weight of people or personal property; or

    e.  Weight of rain that collects on a roof.



H.   **COVERED CAUSE OF LOSS** means all loss and/or damage arising from **DEFINED CAUSES OF LOSS** and covered by this **POLICY**.

I.   **COVERED PROPERTY** means the **NAMED INSURED'S COVERED PROPERTY**, as listed in the **STATEMENT OF VALUES**, used on the **NAMED INSURED'S** business operations and provided coverage by this **POLICY**.

J.   **DEDUCTIBLE** means the amount payable by the **NAMED INSURED** on a per **OCCURRENCE** basis or as otherwise described in SECTION I. I.

K.   **DEFINED CAUSE OF LOSS** means fire, lightning, **EXPLOSION**, **WINDSTORM** OR **HAIL**, **SMOKE**, **AIRCRAFT OR VEHICLE IMPACT**, **RIOT**, **STRIKE OR CIVIL COMMOTION**, **VANDALISM AND MALICIOUS MISCHIEF**, or **LEAKAGE FROM FIRE PROTECTION EQUIPMENT**.

L.   **EARTHQUAKE** means:

   1.   Quaking, vibratory or undulating movement of a portion of the earth's crust, produced by tectonic or underground volcanic forces or by breaking, shaking, trembling or shifting of rock beneath the earth's crust. The definition of **EARTHQUAKE** does not include subsidence, landslide, rock slide, mudflow, earth rising, earth sinking, earth shifting or settling, unless as a direct result of such **EARTHQUAKE**.

   2.   **EARTHQUAKE SHOCK** means the sum total of all the **NAMED INSURED'S** losses attributable directly from the peril of **EARTHQUAKE** sustained during any period of one hundred sixty-eight (168) consecutive hours by reason of one **EARTHQUAKE SHOCK** or a series of **EARTHQUAKE SHOCKS**.

   3.   Volcanic eruption, meaning the eruption, **EXPLOSION** or effusion of a volcano, excluding tsunami. All volcanic eruptions that occur within any one hundred sixty-eight (168) hour period will constitute a single occurrence.

   4.   Sprinkler Leakage caused by or resulting from **EARTHQUAKE**.

   5.   Tsunami flooding, whether caused by **EARTHQUAKE** or not, is not included in the **EARTHQUAKE** peril.

M.   **EARTHQUAKE COUNTIES**: As referenced in this **POLICY**, designated **EARTHQUAKE ZONES** shall be defined as all **LOCATIONS** situated within the States or Counties as specified below:

   1.   **ALASKA**: All Counties except Northslope

   2.   **CALIFORNIA**: Entire State

   3.   **HAWAII**: All Counties other than Honolulu and Kauai

   4.   **PACIFIC NORTHWEST STATES**: Oregon and Washington

   5.   New Madrid Earthquake Zone Counties:



a.   Arkansas: Arkansas, Clay, Cleburne, Conway, Craighead, Crittenden, Cross, Desha, Faulkner, Fulton, Independence, Izard, Greene, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Prairie, Poinsett, Pulaski, Randolph, Sharp, St. Francis, Stone, Van Buren, White, and Woodruff.

b.   Illinois: Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Moultrie, Perry, Pope, Pulaski, Randolph, Richland, Saline, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, and Williamson.

c.   Indiana: Davies, Dubois, Gibson, Knox, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, and Warrick.

d.   Kentucky: Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Todd, Trigg, Union, and Webster.

e.   Mississippi: Alcorn, Benton, Bolivar, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tunica, and Union.

f.   Missouri: Bollinger, Butler, Cape Girardeau, Carter, Crawford, Dent, Dunklin, Franklin, Howell, Iron, Jefferson, Lincoln, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis City, St. Louis, Ste. Genevieve, Stoddard, Warren, Washington, and Wayne.

g.   Tennessee: Benton, Carroll, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, and Weakley.

N.   **ELECTRONIC DATA AND MEDIA** means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or produced in a format for use with a computer.

O.   **EQUIPMENT BREAKDOWN** means:

1.   Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2.   Electrical device, appliance or wire(s) disturbance by means of artificially generated electrical current, including electric arcing,

3.   **EXPLOSION** of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Named Insured, or operated under the control of the **NAMED INSURED**;

4.   Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5.   Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.



P.  **EXPLOSION** means a sudden, accidental and destructive shattering or eruption. **EXPLOSION** does not include loss or damage occasioned by or incident to **EXPLOSION** in or relating to the following equipment owned, operated or controlled by the Insured:

1.  Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2.  Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3.  Combustion gas turbines;

To the extent of the loss to such products, any products manufactured by the **NAMED INSURED** or other property attached to these products or forming a part thereof, including those products and property undergoing pressure tests. **EXPLOSION** will include loss or damage arising or resulting from:

1.  The **EXPLOSION** of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;
2.  A combustion **EXPLOSION** occurring outside of any equipment excluded above, even though such combustion **EXPLOSION** may have been the direct result of the **EXPLOSION** or such excluded equipment.

The following are not **EXPLOSIONS** within the intent or meaning of this definition:

1.  Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2.  Bursting or rupture caused by freezing;

3.  Sonic shock waves, generally known as Sonic Boom;

4.  Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

Q.  **FINE ARTS** means: paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, antique jewelry, bric-a-brac, porcelains, and similar property of rarity, historical value, or artistic merit; excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metal, watercraft, aircraft, money and securities.

R.  **FLOOD** means, whether natural or manmade, **FLOOD** waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levee, dike, floodgates, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. Tsunami induced flooding is considered a **FLOOD**.

Water which backups or discharges from sewers, drains or sumps on the Insured's **LOCATION** is not considered **FLOOD**, unless such backup or discharge was due to **FLOOD** as defined above.

S.  **FUNGUS**, **MOLD(S), MILDEW**, **SPORES** OR **YEAST** means:



1.    **FUNGUS** includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including **MOLD(S)**, rusts, **MILDEWS**, smuts and mushrooms.

2.    **MOLD** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce **MOLD(S)**.

3.    **SPORE** means any dormant or reproductive body produced by or arising or emanating out of any **FUNGUS**, **MOLD(S)**, **MILDEW**, plants, organisms or microorganisms.

T.    **HARD COSTS** means:

1.    Building(s) or structure(s) as described in the schedule of values including foundations, machinery and fixtures and attachments and similar property that has become or intended to become a permanent part of the building(s) or structure(s); and

2.    Materials, supplies and similar property owned by others for which you are responsible for. This property must be used in the construction operations insured under this policy and be located at the premise(s) described in the schedule of values.

U.    **HURRICANE** means a storm system that has been declared to be a **HURRICANE** by the National Hurricane Center of the National Weather Service.

V.    **INSURER** means the company or companies shown on the Allocation Endorsement as their interests appear thereon.

W.    **LAND** means **LAND** (except **LAND** for which values are reported and premiums are charged hereunder), such as dikes, levees, and other surface containment structures. Surface containment structures are not **LAND** to a depth of six inches below such surface containment structures.

X.    **LEAKAGE FROM FIRE PROTECTION EQUIPMENT** means direct physical loss or damage from:

1.    Water or other substances discharged from within any part of the **FIRE PROTECTION EQUIPMENT** for the insured **LOCATION** or for any adjoining **LOCATIONS**;

2.    Collapse or fall of tanks forming a part of the **FIRE PROTECTION EQUIPMENT** or the component parts or supports of such tanks.

The term **FIRE PROTECTION EQUIPMENT** includes tanks, water mains, hydrants or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include:

1.    Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2.    Any underground water mains or appurtenances located outside of the insured **LOCATION** and forming a part of the public water distribution system;



3.    Any pond or reservoir in which the water is impounded by a dam.

Y.    **LOCATION** is defined as specified in the **STATEMENT OF VALUES** on file with The Company; but if not so specified, **LOCATION** means any **BUILDING**, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear **LAND** space or open waterways, each not less than two hundred feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

Z.    **MISCELLANEOUS UNNAMED LOCATION(S)** means a **LOCATION** that has not been included in the **STATEMENT OF VALUES** on file with **INSURER** and has not been reported to **INSURER** as required by the **POLICY** provisions.

There is no coverage under this Paragraph for loss or damage which is covered under the **ERRORS OR OMISSIONS** or **NEWLY ACQUIRED PROPERTY** provisions of this **POLICY**.

AA.    **NAMED INSURED** means the **NAMED INSURED(S)** as well as any **ADDITIONAL INSURED(S), MORTGAGEE(S), LENDER'S LOSS PAYEE(S), LOSS PAYEE(S)** set forth in the relevant Certificates of Insurance or contract as specified in Section I.

BB.    **N/A** means Not Applicable.

CC.    **NAMED STORM** a storm that has been declared by the National Weather Service to be a **HURRICANE**, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression.

DD.    **OCCURRENCE** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, arising out of a single event, and includes all resultant or concomitant insured losses. The **OCCURRENCE** must occur during the **POLICY** period.

If more than one event for **WINDSTORM** & **HAIL**, **NAMED STORM**, **RIOT**, **STRIKE OR CIVIL COMMOTION**, **VANDALISM & MALICIOUS MISCHIEF**, **EARTHQUAKE** OR **FLOOD** covered by this **POLICY** occurs within any period of seventy-two (72) hours during the term of this **POLICY**, such covered events shall be deemed to be a single **OCCURRENCE**. When filing proof of loss, the **NAMED INSURED** may elect the moment at which the seventy- two (72) hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the **COVERED PROPERTY**.

Each loss by **EARTHQUAKE** occasioned by any one disaster, loss or series of disasters or losses, arising out of any one event will constitute a single loss hereunder, provided, if more than one "**EARTHQUAKE**" shock arising out of any one event occurs within any period of one hundred sixty-eight (168) hours during the **POLICY** period, such "g" shocks will be deemed to be a single "**EARTHQUAKE**" within the meaning hereof. We will not be liable for any loss caused by any "**EARTHQUAKE**" shock occurring before the effective date and time of this POLICY, nor for any loss occurring after the expiration date and time of this **POLICY**.

EE.    **POLLUTANTS** OR **CONTAMINANTS** means any solid, liquid, gaseous or thermal irritant or **CONTAMINANT**, including smog, **SMOKE**, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration,



loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

FF.    **RIOT**, **STRIKE** OR **CIVIL COMMOTION** means violent public disturbances including:

    1.    Acts of striking employees while occupying the insured **LOCATION**; and

    2.    Pilferage or looting occurring at the time and place of a **RIOT** or **CIVIL COMMOTION**.

GG.    **REBATE** means remuneration, payment, gift, discount, or transfer of any item of value to the **NAMED INSURED** by or on behalf of a person or business performing the repairs as an incentive or inducement to obtain repairs performed by that person or business.

HH.    **SINKHOLE** means a land form created by subsidence of soil, sediment or rock as underlying strata are dissolved by ground water. A **SINKHOLE** forms by collapse into subterranean voids created by dissolution of limestone or dolostone, or by subsistence as these strata are dissolved.

II.    **SMOKE** means loss or damage ensuing from a sudden and accidental release of a visible suspension of carbon and other particles. The peril of **SMOKE** does not include loss or damage caused by **SMOKE** from agricultural smudging or industrial operations.

JJ.    **SPECIAL FLOOD HAZARD AREAS** means areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA) and shall only include those Flood Zones that are prefixed A or V.

KK.    **TIER 1** and **TIER 2**: Shall be defined as all **LOCATIONS** situated within Tier 1 or Tier 2 Counties, Parishes or Independent Cities as specified below:

| State | Tier 1 | Tier 2 |
|---|---|---|
| Alabama | Baldwin<br>Mobile | Covington<br>Escambia<br>Geneva<br>Houston |
| Connecticut | Fairfield<br>Middlesex<br>New Haven<br>New London | |
| Delaware | Sussex | Kent |
| Florida | All Counties | |

**StarStone**
Part of the Enex Specialty Group

| Georgia | Bryan<br>Camden<br>Chatham<br>Glynn<br>Liberty<br>McIntosh | Brantley<br>Charlton<br>Effingham<br>Long<br>Wayne |
|---|---|---|
| Hawaii | All Counties | |
| Louisiana | Cameron<br>Iberia<br>Jefferson<br>Lafourche<br>Orleans<br>Plaquemines<br>St. Bernard<br>St. Martin (South)<br>St. Mary<br>St. Tammany<br>Terrebonne<br>Vermilion | Acadia<br>Ascension<br>Assumption<br>Calcasieu<br>East Baton Rouge<br>Iberville<br>Jefferson Davis<br>Lafayette<br>St. Charles<br>St. James<br>St. John The Baptist<br>St. Martin (North)<br>Tangipahoa<br>Washington<br>West Baton Rouge |
| Massachusetts | Barnstable<br>Bristol<br>Dukes<br>Essex<br>Nantucket<br>Norfolk<br>Plymouth<br>Suffolk | Middlesex |
| Maryland | Worcester | Calvert<br>Dorchester<br>St. Mary's<br>Somerset<br>Wicomico |
| Maine | Cumberland<br>Hancock<br>Knox<br>Lincoln<br>Sagadahoc<br>Waldo | |



| | Washington York | |
|---|---|---|
| Mississippi | Hancock<br>Harrison<br>Jackson | George<br>Pearl River<br>Stone |
| North Carolina | Beaufort<br>Bertie<br>Brunswick<br>Camden<br>Carteret<br>Chowan<br>Currituck<br>Dare<br>Hyde<br>New Hanover<br>Onslow<br>Pamlico<br>Pasquotank<br>Pender<br>Perquimans<br>Tyrrell<br>Washington | Bladen<br>Columbus<br>Craven<br>Duplin<br>Gates<br>Hertford<br>Jones<br>Lenoir<br>Martin<br>Pitt<br>Sampson |
| New Hampshire | Rockingham<br>Strafford | |
| New Jersey | Atlantic<br>Cape May<br>Monmouth<br>Ocean | Burlington<br>Cumberland<br>Essex<br>Hudson<br>Middlesex<br>Union |
| New York | Kings<br>Nassau<br>Queens<br>Richmond<br>Suffolk | Bronx<br>New York<br>Westchester |
| Rhode Island | Newport<br>Washington | Bristol<br>Kent |

**StarStone**

Part of the Core Specialty Group

| South Carolina | Beaufort<br>Charleston<br>Colleton<br>Georgetown<br>Horry<br>Jasper | Berkeley<br>Dillon<br>Dorchester<br>Florence<br>Hampton<br>Marion<br>Williamsburg |
|---|---|---|
| Texas | Aransas<br>Brazoria<br>Calhoun<br>Cameron<br>Chambers<br>Galveston<br>Harris<br>Jefferson<br>Kennedy<br>Kleberg<br>Matagorda<br>Nueces<br>Refugio<br>San Patricio<br>Willacy | Bee<br>Brooks<br>Fort Bend<br>Goliad<br>Hardin<br>Hidalgo<br>Jackson<br>Jim Wells<br>Liberty<br>Live Oak<br>Orange<br>Victoria<br>Wharton |
| Virginia | Accomack<br>Chesapeake<br>Gloucester<br>Hampton<br>Isle of Wight<br>James City<br>Lancaster<br>Mathews<br>Middlesex<br>Newport News<br>Norfolk<br>Northampton<br>Northumberland<br>Poquoson<br>Portsmouth<br>Suffolk<br>Surry<br>Virginia Beach City<br>Westmoreland | |



| | Williamsburg City York | |
|---|---|---|

LL.  **TIME ELEMENT VALUES** means the **GROSS EARNINGS, EXTRA EXPENSE, ROYALTIES, CONTINGENT TIME ELEMENT,RENTAL INCOME, DELAY IN COMPLETION** and/or **SOFT COSTS** (as applicable) **VALUES**, as reported on the **STATEMENT OF VALUES** on file with **INSURER**, for the **PERIOD OF INTERRUPTION** sustained by the **NAMED INSURED** identified in the **STATEMENT OF VALUES**.

MM.  **TOTAL INSURABLE VALUES (TIV)** means all **COVERED PROPERTY** (real & personal property) and **TIME ELEMENT VALUES** reported on the **STATEMENT OF VALUES** on file with **INSURER**.

NN.  **VALUABLE PAPERS AND RECORDS** means documents that are written, printed or otherwise inscribed. These include:

1.  Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2.  Legal and financial agreements, such as deeds and mortgages;

3.  Addressograph plates; and

4.  Any electrically produced data, such as printouts, punched cards, tapes or discs.

**VALUABLE PAPERS AND RECORDS** does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

OO.  **VANDALISM AND MALICIOUS MISCHIEF** means wilful and malicious damage to, or destruction of, **COVERED PROPERTY**. **VANDALISM AND MALICIOUS MISCHIEF** does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of individuals committing burglary.

PP.  **WARRANTY**:

1.  means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of INSURER'S liability hereunder, the existence of fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of loss or damage within the coverage of the contract.

2.  A breach of warranty shall not void an insurance contract or defeat recovery hereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract. If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not void such contract or defeat recovery hereunder with respect to any kind of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.



QQ. **WINDSTORM OR HAIL** means direct action of wind or the direct action of hail, accompanied by wind or not, which causes loss or damage. **WINDSTORM OR HAIL** does not mean impacts or gradual changes which cause loss or damage, and which are brought about by frost, ice (other than hail), snow or sleet, whether driven by wind or not; or cold weather.

**WINDSTORM OR HIGH HAZARD HAIL ZONES**: Designated **WINDSTORM OR HAIL HIGH HAZARD HAIL ZONES** as reflected in this **POLICY** shall be the following:

**WINDSTORM OR HAIL HIGH HAZARD ZONE 1** means the following counties (unless otherwise stated) within the following states:

**Colorado:** Counties of Adams, Arapahoe, Baca, Bent, Cheyenne, Crowley, Elbert, Kiowa, Kit Carson, Lincoln, Logan, Morgan, Phillips, Prowers, Sedgwick, Washington, Weld and Yuma;

**Kansas:** Counties of Barber, Barton, Butler, Cheyenne, Clark, Comanche, Cowley, Decatur, Dickinson, Edwards, Ellis, Ellsworth, Finney, Ford, Gove, Graham, Grant, Gray, Greeley, Hamilton, Harper, Harvey, Haskell, Hodgeman, Jewell, Kearny, Kingman, Kiowa, Lane, Lincoln, Logan, Marion, McPherson, Meade, Mitchell, Morton, Ness, Norton, Osborne, Ottawa, Pawnee, Phillips, Pratt, Rawlins, Reno, Rice, Rooks, Rush, Russell, Saline, Scott, Sedgwick, Seward, Sheridan, Sherman, Smith, Stafford, Stanton, Stevens, Sumner, Thomas, Trego, Wallace and Wichita;

**Nebraska:** Counties of Arthur, Banner, Blaine, Box Butte, Brown, Buffalo, Chase, Cherry, Cheyenne, Custer, Dawes, Dawson, Deuel, Dundy, Franklin, Frontier, Furnas, Garden, Gosper, Grant, Harlan, Hayes, Hitchcock, Hooker, Kearney, Keith, Kimball, Lincoln, Logan, Loup, McPherson, Morrill, Perkins, Phelps, Red Willow, Rock, Scotts Bluff, Sheridan, Sherman, Sioux, Thomas and Valley;

**New Mexico:** Counties of Chaves, Curry, Eddy, Lea, Quay and Roosevelt;

**Oklahoma:** Counties of Alfalfa, Beaver, Beckham, Blaine, Caddo, Canadian, Carter, Cimarron, Cleveland, Comanche, Cotton, Custer, Dewey, Ellis, Garfield, Garvin, Grady, Grant, Greer, Harmon, Harper, Jackson, Jefferson, Kay, Kingfisher, Kiowa, Lincoln, Logan, Love, Major, Marshall, McClain, Murray, Noble, Oklahoma, Osage, Pawnee, Payne, Pottawatomie, Roger Mills, Stephens, Texas, Tillman, Washita, Woods and Woodward;

**South Dakota:**  Counties of Bennett, Butte, Custer, Fall River, Haakon, Harding, Jackson, Lawrence, Meade, Oglala Lakota, Pennington, Perkins, Todd and Ziebach;

**Texas:**  Counties of Andrews, Archer, Armstrong, Bailey, Baylor, Borden, Bosque, Brewster, Briscoe, Brown, Callahan, Carson, Castro, Childress, Clay, Cochran, Coke, Coleman, Collin, Collingsworth, Comanche, Concho, Cooke, Cottle, Crane, Crosby, Dallam, Dallas, Dawson, Deaf Smith, Denton, Dickens, Donley, Eastland, Ector, Ellis, Erath, Fisher, Floyd, Foard, Gaines, Garza, Glasscock, Gray, Grayson, Hale, Hall, Hamilton, Hansford, Hardeman, Hartley, Haskell, Hemphill, Hill, Hockley, Hood, Howard, Hutchinson, Jack, Johnson, Jones, Kent, King, Knox, Lamb, Lampasas, Lipscomb, Loving, Lubbock, Lynn, Martin, McCulloch, Midland, Mills, Mitchell, Montague, Moore, Motley, Nolan, Ochiltree, Oldham, Palo Pinto, Parker, Parmer, Pecos, Potter, Randall, Roberts, Rockwall, Runnels, San Saba, Scurry, Shackelford, Sherman, Somervell, Stephens, Sterling, Stonewall, Swisher, Tarrant, Taylor, Terrell, Terry, Throckmorton, Tom Green, Upton, Ward, Wheeler, Wichita, Wilbarger, Winkler, Wise, Yoakum and Young; and

**Wyoming:** Counties of Campbell, Crook, Goshen, Laramie, Niobrara, Platte and Weston.

**StarStone**
Part of the Core Specialty Group

**WINDSTORM OR HAIL HIGH HAZARD ZONE 2** means the following counties (unless otherwise stated) within the following states:

**Colorado:** Counties of Denver, Douglas, El Paso, Las Animas, Otero and Pueblo;

**Kansas:** Counties of Allen, Anderson, Atchison, Bourbon, Brown, Chase, Chautauqua, Cherokee, Clay, Cloud, Coffey, Crawford, Douglas, Elk, Franklin, Geary, Greenwood, Jackson, Jefferson, Johnson, Labette, Leavenworth, Linn, Lyon, Marshall, Miami, Montgomery, Morris, Nemaha, Neosho, Osage, Pottawatomie, Republic, Riley, Shawnee, Wabaunsee, Washington, Wilson, Woodson and Wyandotte;

**Missouri:** Counties of Andrew, Atchison, Barry, Barton, Bates, Benton, Buchanan, Camden, Cass, Cedar, Christian, Clay, Clinton, Crawford, Dade, Dallas, Dekalb, Dent, Douglas, Franklin, Gasconade, Greene, Henry, Hickory, Holt, Howell, Jackson, Jasper, Jefferson, Johnson, Laclede, Lafayette, Lawrence, Lincoln, Maries, McDonald, Newton, Nodaway, Oregon, Osage, Ozark, Phelps, Platte, Polk, Pulaski, Ray, Shannon, St. Charles, St. Clair, St. Louis, Stone, Taney, Texas, Vernon, Warren, Washington, Webster and Wright; and the City of St. Louis;

**Nebraska:** Counties of Adams, Antelope, Boone, Boyd, Burt, Butler, Cass, Cedar, Clay, Colfax, Cuming, Dodge, Douglas, Fillmore, Gage, Garfield, Greeley, Hall, Hamilton, Holt, Howard, Jefferson, Johnson, Keya Paha, Knox, Lancaster, Madison, Merrick, Nance, Nemaha, Nuckolls, Otoe, Pawnee, Pierce, Platte, Polk, Richardson, Saline, Sarpy, Saunders, Seward, Stanton, Thayer, Thurston, Washington, Wayne, Webster, Wheeler and York;

**New Mexico:** Counties of Colfax, De Baca, Guadalupe, Harding, Lincoln, San Miguel and Union;

**Oklahoma:** Counties of Adair, Atoka, Bryan, Cherokee, Choctaw, Coal, Craig, Creek, Delaware, Haskell, Hughes, Johnston, Latimer, Le Flore, Mayes, McCurtain, McIntosh, Muskogee, Nowata, Okfuskee, Okmulgee, Ottawa, Pittsburg, Pontotoc, Pushmataha, Rogers, Seminole, Sequoyah, Tulsa, Wagoner and Washington;

**South Dakota:** Counties of Aurora, Beadle, Bon Homme, Brookings, Brown, Brule, Buffalo, Campbell, Charles Mix, Clark, Clay, Codington, Corson, Davison, Day, Deuel, Dewey, Douglas, Edmunds, Faulk, Gregory, Hamlin, Hand, Hanson, Hughes, Hutchinson, Hyde, Jerauld, Jones, Kingsbury, Lake, Lincoln, Lyman, Marshall, McCook, McPherson, Mellette, Miner, Minnehaha, Moody, Potter, Sanborn, Spink;

**Texas:** Counties of Anderson, Bandera, Bell, Bexar, Blanco, Bowie, Burnet, Camp, Cass, Cherokee, Comal, Coryell, Crockett, Culberson, Delta, Edwards, Falls, Fannin, Franklin, Freestone, Gillespie, Gregg, Harrison, Hays, Henderson, Hopkins, Hunt, Irion, Jeff Davis, Kaufman, Kendall, Kerr, Kimble, Kinney, Lamar, Limestone, Llano, Marion, Mason, Maverick, McLennan, Medina, Menard, Morris, Navarro, Panola, Presidio, Rains, Reagan, Real, Red River, Reeves, Rusk, Schleicher, Smith, Sutton, Titus, Travis, Upshur, Uvalde, Val Verde, Van Zandt, Williamson, Wood and Zavala; and

**Wyoming:** Counties of Albany, Converse, Johnson and Sheridan.



**TERRORISM RISK INSURANCE ACT REJECTION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**TERRORISM RISK INSURANCE ACT REJECTION ENDORSEMENT**

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as and extended by the Terrorism Risk Insurance Insurance Program Reauthorization Act of 2015 summarized in the disclosure notice.

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

**All other terms and conditions of the policy remain unchanged.**



## NAMED STORM DEDUCTIBLE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**NAMED STORM DEDUCTIBLE ENDORSEMENT**

1. 3% of the TIV at each Building involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of $25,000 per Occurrence; as respects Locations in: All Locations, as per Statement of Values on file with the Company.

2. N/A% of the TIV at each Building involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of $N/A per Occurrence; as respects Locations in: All Tier 1 Locations, as per Statement of Values on file with the Company.

3. N/A% of the TIV at each Building involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of $N/A per Occurrence; as respects Locations in: All Tier 2 Locations, as per Statement of Values on file with the Company.

4. N/A% per Unit of Insurance involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of N/A any one Occurrence; as respects Locations in: All Locations, as per Statement of Values on file with the Company.

Unit of Insurance is defined as: In the application of the Deductibles, each of the following shall be considered a separate unit of insurance:
I.      Each separate Building or structure
II.     Contents in each separate Building or structure
III.    Property in the yard of each separate Building or structure
IV.     Annual Time Element Value applying to each separate Building or structure

All other terms and conditions of this Policy remain unchanged.



## WIND DRIVEN PRECIPITATION DEDUCTIBLE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**WIND DRIVEN PRECIPITATION DEDUCTIBLE ENDORSEMENT**

1. 3% of the TIV at each Building involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of $25,000 per Occurrence; as respects Locations in: All Locations, as per Statement of Values on file with the Company.

2. N/A% of the TIV at each Building involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of $N/A per Occurrence; as respects Locations in: All Tier 1 Locations, as per Statement of Values on file with the Company.

3. N/A% of the TIV at each Building involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of $N/A per Occurrence; as respects Locations in: All Tier 2 Locations, as per Statement of Values on file with the Company.

4. N/A% per Unit of Insurance involved in the loss or damage arising out of a Named Storm, subject to a minimum Deductible of N/A any one Occurrence; as respects Locations in: All Locations, as per Statement of Values on file with the Company.

Unit of Insurance is defined as: In the application of the Deductibles, each of the following shall be considered a separate unit of insurance:
I.      Each separate Building or structure
II.     Contents in each separate Building or structure
III.    Property in the yard of each separate Building or structure
IV.    Annual Time Element Value applying to each separate Building or structure

All other terms and conditions of this Policy remain unchanged.



**FLORIDA CATASTROPHIC GROUND COVER COLLAPSE AND SINKHOLE LOSS ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement.

**THIS ENDORSEMENT ONLY APPLIES TO LOCATIONS IN THE STATE OF FLORIDA**

**CATASTROPHIC GROUND COVER COLLAPSE**
We will pay for direct physical loss or damage to Covered Property at insured locations within the state of Florida caused by or resulting from **CATASTROPHIC GROUND COVER COLLAPSE** meaning geological activity that results in all of the following.

| | |
|---|---|
| (i) | The abrupt collapse of the ground cover |
| (ii) | A depression in the ground cover clearly visible to the naked eye; |
| (iii) | Structural damage to the building, including the foundation; and |
| (iv) | The insured building being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure. |

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a **CATASTROPHIC GROUND COVER COLLAPSE**. The **EARTH MOVEMENT** exclusion does not apply to coverage for **CATASTROPHIC GROUND COVER COLLAPSE.**

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to Catastrophic Ground Cover Collapse also qualifies as **SINKHOLE LOSS** or **EARTH MOVEMENT** (if either or both of those causes of loss are covered under this Policy), only one Limit of Insurance will apply to such loss or damage.

**SINKHOLE LOSS:**

The terms of this Endorsement provide specified **SINKHOLE** coverage.

The **SUBLIMIT OF LIABILITY** for **SINKHOLE** coverage hereunder shall not exceed $50,000 in any one **OCCURRENCE**. This amount is a **SUBLIMIT OR LIABILITY** and is part of and not in addition to the **POLICY LIMIT OF LIABILTIY** or **EARTHQUAKE SUBLIMIT** elsewhere in the **POLICY**.

As respects this extension of coverage, the following deductible shall apply in any one **OCCURRENCE** $5,000.

As respects **LOCATIONS** in Florida:

| | |
|---|---|
| a. | Coverage for direct physical loss caused by **SINKHOLE LOSS** that occurs during the **POLICY** period is limited to the **PRINCIPAL BUILDING**, including the costs incurred to: |
| i. | Stabilize the **PRINCIPAL BUILDING'S** land and **PRINCIPAL BUILDING**; and |
| ii. | Repair the foundation of the **PRINCIPAL BUILDING**. |

Such work must be in accordance with the requirements of Florida law; and in accordance with the recommendations of the **INSURER(S)**' professional engineer or professional geologist and with notice to the **NAMED INSURED**.

The professional engineer or professional geologist must be selected or approved by the **INSURER(S)**.

b.  Upon receipt of a claim for a **SINKHOLE LOSS** to a **PRINCIPAL BUILDING**, an inspection of the property will be undertaken to determine if there is **STRUCTURAL DAMAGE** that may be a result of **SINKHOLE ACTIVITY**. The claim may be denied on the basis of this inspection.

c.  If requested, the **INSURER(S)'**, professional engineer or professional geologist may also conduct testing, as described in Section 627.7072,Florida Statutes, and, in that event, shall issue a written report and certification to both the **INSURER(S)** and **NAMED INSURED** upon completion of said testing in order to certify **SINKHOLE LOSS**.

d.  **SINKHOLE LOSS** is verified, if based on the testing, the professional engineer's or professional geologist's written report and certification states that (1) structural damage to the **PRINCIPAL BUILDING** has been identified within a reasonable professional probability; (2) the cause of the **STRUCTURAL DAMAGE** is **SINKHOLE ACTIVITY** within a reasonable professional probability; (3) that the analyses concluded were of sufficient scope to identify **SINKHOLE ACTIVITY** as the cause of damage within a reasonable professional probability; (4) a description of the tests performed and (5) recommendations for methods of stabilizing the **LAND** and **PRINCIPAL BUILDING** and for making repairs to the foundation.

e.  The **INSURER(S)** may deny the claim if the written report and certification does not confirm **SINKHOLE LOSS**.

f.  If the **INSURER(S)** request that the testing be performed and that the written report and written certification be issued, the costs of the above-referenced testing and issuance of the above-referenced written report and certification by the professional engineer or professional geologist shall be paid for by the **INSURER(S)**.

In the event of a **SINKHOLE LOSS** to a **PRINCIPAL BUILDING**, the **NAMED INSURED** must repair the damage or loss in accordance with the recommendations of the professional engineer or professional geologist selected or approved by the **INSURER(S).**

Prior to the **NAMED INSURED** entering into a contract for performance of **BUILDING** stabilization or foundation repair, if the professional engineer or professional geologist selected or approved by the **INSURER(S)** determines that the repairs cannot be completed within the applicable **LIMIT OF LIABILITY**, the **INSURER(S)** at their option; either:

i.  Pay to complete the professional engineer's recommended repairs; or

ii.  Pay the **POLICY** limits of the applicable **BUILDING**.

However, until the **NAMED INSURED** enters into a contract for performance of **BUILDING** stabilization or foundation repair:

i.  This **POLICY** will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the affected **PRINCIPAL BUILDING**; and

ii.  Payment for **SINKHOLE LOSS** to the **PRINCIPAL BUILDING** may be limited to the actual cash value of the loss to such property.

After the **NAMED INSURED** has entered into a contract for performance of **BUILDING** stabilization or foundation repair, this **POLICY** will pay the amounts necessary to begin and perform such repairs:

i.  As the work is performed; and

ii.  As the expenses are incurred.

The **INSURER(S)** may not require the **NAMED INSURED** to advance payment for such repairs.



If the repair has begun and the professional engineer determines that the repairs will exceed the applicable **LIMIT OF LIABILITY**, this **POLICY** will pay only the remaining portion of the applicable **LIMIT OF LIABILITY** upon such determination.

The most that will be paid under this **POLICY** for the total of all **SINKHOLE LOSS**, including:

    i.    **PRINCIPAL BUILDING** and the **PRINCIPAL BUILDING**'s land stabilization; and

    ii.    Foundation repair of the **PRINCIPAL BUILDING** is the applicable **SUBLIMIT OF LIABILITY** as shown in this **POLICY** for the affected **BUILDING**.

This **POLICY** will pay for direct physical loss or damage to **BUSINESS PERSONAL PROPERTY** shown in the **STATEMENT OF VALUES**, when the following apply:

    i.    The **BUSINESS PERSONAL PROPERTY** is located within a **PRINCIPAL BUILDING**; and

    ii.    The direct physical loss or damage results from or is caused by direct **SINKHOLE LOSS** that occurs during the **POLICY** period.

They will not pay for loss or damage to **BUSINESS PERSONAL PROPERTY** if the loss or damage is excluded elsewhere in this **POLICY.**

Coverage for **BUSINESS PERSONAL PROPERTY** caused by **SINKHOLE LOSS** does not include **BUILDING** repair, loss or damage to the **BUILDING**, stabilization of the **BUILDING** or land, foundation repair or other property not covered, excluded, or limited elsewhere in this **POLICY**.

    g.    **SINKHOLE LOSS** does not include:

        i.    Sinking or collapse of land into man-made underground cavities; or

        ii.    **EARTHQUAKE**; or

        iii.    **LAND** or the replacement, rebuilding, restoration, or value of **LAND** except as provided under b.1. above and in accordance with the recommendations of the **INSURER(S)** professional engineer.

    h.    In order to prevent additional damage to the **PRINCIPAL BUILDING**, the **NAMED INSURED** must enter into a contract for the performance of **BUILDING** stabilization and foundation repairs in accordance with the recommendations of the **INSURER(S)**' professional engineer or professional geologist within 90 days after coverage is confirmed for **SINKHOLE LOSS** and the **NAMED INSURED** is notified of such coverage.

This time period tolls if either party invokes the neutral evaluation process, and begins again 10 days after the conclusion of the neutral evaluation process.

The stabilization and all other repairs to the **PRINCIPAL BUILIDNG** and **BUSINESS PERSONAL PROPERTY** must be completed with 12 months after entering into the contract for repairs unless:

    i.    There is mutual agreement between the **NAMED INSURED** and the **INSURER(S)** to the contrary;

    ii.    The claim has been referred to the Neutral Evaluation Process;

    iii.    The claim is in litigation; or

    iv.    The claim is under appraisal or is undergoing mediation.

This Coverage Part applies when the **STATEMENT OF VALUES** shows a **LIMIT OF LIABILITY** for the affected **PRINCIPAL BUILDING**.

    i.    As described on page 1 of this Endorsement, after the **INSURER(S)** inspect the property, the claim may be denied by the **INSURER(S)** with or without the performance of testing, as described in Section 627.7072, Florida Statutes, .

        i.    The **NAMED INSURED** may demand testing, which must be communicated to The Company in writing, within 60 days after the **NAMED INSURED'S** receipt of a denial of the claim.



    ii.    If the **NAMED INSURED** demands testing, the **NAMED INSURED** shall pay 50% of the actual costs of the analyses and services or $2,500, whichever is less.

    iii.    The **NAMED INSURED** shall be reimbursed for costs in ii. above if the **INSURER'(S)** engineer or its geologist provides a written report and written certification that there is **SINKHOLE LOSS**.

j.    If the **NAMED INSURED** has submitted a **SINKHOLE** claim without good faith grounds for submitting such claim and such claim is not withdrawn prior to the commencement of **SINKHOLE** analysis and services to investigate the claim, the **NAMED INSURED** is required, after written certification that there is no **SINKHOLE ACTIVITY**, to reimburse the **INSURER(S)** for 50% of the actual costs, up to $2,500, of the **SINKHOLE** analysis and services provided by a professional engineer or professional geologist to conduct testing to determine the cause of loss; pursuant to Sections 627.7072 and 627.7073, Florida Statutes.

k.    Once the **INSURER(S)** has paid a claim for a **SINKHOLE LOSS**, the **INSURER(S)** will file with the county clerk of court a copy of any **SINKHOLE** report and certification which was prepared on the **NAMED INSURED'S** behalf or at their request. There shall be no cause of action or liability against an **INSURER(S)** for failure to file the **SINKHOLE** report or certification.

The **INSURER(S)** will bear the costs of filing and recording the **SINKHOLE** report and certification.

l.    The **NAMED INSURED** may not accept a **REBATE** from any person performing repairs, pursuant to Section 627.707, Florida Statutes.

If the **NAMED INSURED** receives a **REBATE**, coverage is void and the **NAMED INSURED** must refund the amount of the **REBATE** to the **INSURER(S).**

m.    With respect to coverage provided by this clause, the **EARTH MOVEMENT** and/or Settlement exclusions do not apply.

n.    Neutral Evaluation Program – with respect to a claim for alleged **SINKHOLE LOSS**, a neutral evaluation program is available to either party if a **SINKHOLE** report has been issued pursuant to Section 627.7073, Florida Statutes.

    i.    Following receipt of a report from a professional engineer or professional geologist on the cause of loss and recommendations for **LAND** stabilization and repair of property, or if the claim is denied, the **NAMED INSURED** will be notified of the right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department).

    ii.    For alleged **SINKHOLE LOSS** to commercial residential properties, this program applies instead of any mediation procedure (if any) set forth elsewhere in this **POLICY**.

    iii.    Either the **NAMED INSURED** or the **INSURER(S)** may file a request with the Department for neutral evaluation. When such a request is filed, the other party must comply with such request.

    iv.    The **INSURER(S)** will pay the reasonable costs associated with the neutral evaluation, regardless of which party makes the request, with the exception of a court reporter's or stenographer's services in the event that a party choses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, the party requesting the court reporter or stenographer shall bear such costs.

    v.    The neutral evaluator will be selected from a list maintained by the Department.

The neutral evaluator must be allowed reasonable access to the interior and exterior of the **PRINCIPAL BUILDING** to be evaluated or for which a claim has been made.

    vi.    The recommendation of the neutral evaluator will not be binding on any party.



      vii.    Participation in the neutral evaluation program does not change the **NAMED INSURED'S** right to file suit in accordance with any Service of Suit Endorsement to this **POLICY**; except that they time for filing suit is extended for a period of:
- i.    60 days following the conclusion of the neutral evaluation process; or
- ii.    Five years from the date of loss, whichever is later.

o.    Coverage for **SINKHOLE LOSS** under this clause does not increase the applicable **LIMIT OF LIABILITY**.

Even if loss or damage qualifies under, or includes, both:
- i.    **CATASTROPHIC GROUND COVER COLLAPSE** (addressed elsewhere in the **POLICY**); and
- ii.    **SINKHOLE LOSS**, only the lower **LIMIT OF LIABILITY** of either subsections i. or ii. will apply to such damage

p.    Coverage for **SINKHOLE LOSS** under this clause does not include visible physical damage or **STRUCTURAL DAMAGE** to **COVERED PROPERTY** or to the **PRINCIPAL BUILDING** including the foundation caused by **SINKHOLE**, **SINKHOLE LOSS**, or **SINKHOLE ACTIVITY** occurring prior to the inception of this **POLICY**.

q.    With respect to coverage provided by this clause, the following is added:

Any claim, including, but no limited to, initial, supplemental, and reopened claims under this **POLICY** is barred unless notice of the claim is given in accordance with the terms of the **POLICY** within 2 years after the **NAMED INSURED** knew or reasonably should have known about the **SINKHOLE LOSS**.

The following **DEFINITIONS** are added as respects to Florida **LOSS**.

**BUSINESS PERSONAL PROPERTY** means the **NAMED INSURED(S)'** personal property that constitutes **COVERED PROPERTY** under the **POLICY** and as set forth in the **STATEMENT OF VALUES**, subject to the exclusions contained in the **POLICY**.

**CATASTROPHIC GROUND COVER COLLAPSE** means direct physical loss or damage to **COVERED PROPERTY** caused by or resulting from geological activity that results in all of the following:
1.    The abrupt collapse of the ground cover;
2.    A depression in the ground cover clearly visible to the naked eye;
3.    Structural damage to the **BUILDING**, including the foundation; and
4.    The insured **BUILDING** or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure, or **BUILDING** does not constitute loss or damage resulting from a **CATASTROPHIC GROUND COVER COLLAPSE**.

The **EARTH MOVEMENT** exclusion does not apply to coverage for **CATASTROPHIC GROUND COVER COLLAPSE**.

**COVERAGE FOR CATASTROPHIC GROUND COVER COLLAPSE** does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to **CATASTROPHIC GROUND COVER COLLAPSE** also qualifies as **SINKHOLE LOSS** or **EARTH MOVEMENT** (if either or both of these causes of loss are covered), only one Limit of Insurance will apply to such loss or damage.

**SINKHOLE** means a landform created by the subsidence of soil, sediment, or rock as underlying strata are dissolved by ground water. A **SINKHOLE** forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.



SINKHOLE LOSS means structural damage to the PRINCIPAL BUILDING, (as defined herein) including the foundation, caused by SINKHOLE ACTIVITY that occurs during the POLICY period.

SINKHOLE ACTIVITY means settlement or systematic weakening of the earth supporting the PRINCIPAL BUILDING, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

    a.   If there is coverage for BUSINESS PERSONAL PROPERTY located within a BUILDING that is not insured under this POLICY, PRINCIPAL BUILDING means:

The BUILDING including any attached garage located at the BUSINESS PERSONAL PROPERTY'S insured LOCATION. PRINCIPAL BUILDING does not include property described in paragraphs c.1 through c.7 below.

    b.   If there is coverage under this POLICY for a BUILDING, PRINCIPAL BUILDING means each such BUILDING.

    c.   PRINCIPAL BUILDING does not include:

        1.   Appurtenant structures connected to the PRINCIPAL BUILDING by a fence, utility line, open space, or breezeway;

        2.   Structures whose foundation is not part of or connected to the applicable PRINCIPAL BUILDING foundation; such as, but not limited to:

            a.   Screen enclosures, porches, lanais, carports, pools, pool decks, spas, gazebos, structures that are not fully enclosed, structures constructed to be open to the weather, and other open sided or ancillary structures;

        3.   Driveways, sidewalks, decks or patios; including, but not limited to, walkways, pavement, fences and other similar property;

        4.   Structures and other property excluded or not covered elsewhere in the POLICY.

        5.   Materials, equipment, supplies and temporary structures on or within 100 feet of the insured LOCATIONS used for making additions, alterations or repairs to property other than the PRINCIPAL BUILDING;

        6.   Temporary structures on or within 100 feet of the insured LOCATIONS used for making additions, alterations or repairs to the PRINCIPAL BUILDING; or

        7.   Other BUILDINGS or garages whose foundation is not part of or connected to the applicable PRINCIPAL BUILDING foundation.

  i.   PRIMARY STRUCTURAL MEMBER means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

  ii.   PRIMARY STRUCTURAL SYSTEM means an assemblage of PRIMARY STRUCTURAL MEMBERS.

  iii.   STRUCTURAL DAMAGE means when a PRINCIPAL BUILDING, regardless of the date of its construction, has experienced the following:

        a.   Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 of the Florida Building Code, which results in settlement related damage to the interior such that the interior BUILDING structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

        b.   Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 of the Florida Building Code, which results in settlement related damage to the PRIMARY STRUCTURAL MEMBERS or PRIMARY STRUCTURAL SYSTEMS that prevents those members or systems from



supporting the loads and forces they were designed to support to the extent that stresses in those PRIMARY STRUCTURAL MEMBERS OR PRIMARY STRUCTURAL SYSTEMS exceeds one and one-third the nominal strength allowed under the Florida Building Code for new BUILDINGS of similar structure, purpose, or LOCATION;

c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical PRIMARY STRUCTURAL MEMBERS to an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the BUILDING, or any portion of the BUILDING containing PRIMARY STRUCTURAL MEMBERS or PRIMARY STRUCTURAL SYSTEMS, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such BUILDING as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as SUBSTANTIAL STRUCTURAL DAMAGE as defined in the Florida Building Code

(i) SUBSTANTIAL STRUCTURAL DAMAGE means, with respect to (a) any story of the PRINCIPAL BUILDING the vertical elements of the lateral force resisting system have suffered damage such that the lateral load-carrying capacity of the structure in any horizontal direction has been reduced by more than 33 percent from its pre-damage condition or (b) the capacity of any vertical load-carrying component, or any group of such components, that supports more than 30 percent of the total area of the structure's floors and roofs has been reduced more than 20 percent from its pre-damage condition and the remaining capacity of such affected elements, with respect to all dead and live loads, is less than 75 percent of that required by the Florida Building Code for new structures of similar structure, purpose and locations.

All other terms and conditions of this policy remain unchanged.